**STATE of Tennessee, Appellee,**

v.

**Robert CROCKER, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

May 15, 1985.

Rehearing Dismissed June 3, 1985.

Permission to Appeal Denied by Supreme Court Aug. 12, 1985.

W.J. Michael Cody, Atty. Gen., Jane W. Young, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., and Richard Vance, Asst. Dist. Atty. Gen., Sevierville, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Robert Crocker, was convicted of receiving stolen property over the value of two hundred dollars ($200). T.C.A. § 39–3–1112. He was sentenced to the custody of the Department of Corrections for eight (8) years as a Range II especially aggravated offender, having committed the present offense while on probation for a prior felony conviction. See T.C.A. §§ 40–35–107(3)(C) and 40–35–109(b) and (c) (Supp.1984).

In this appeal, the defendant contests the evidence, says the trial court improperly allowed him to be cross-examined regarding a prior conviction, and asserts certain violations of the Rules of Criminal Procedure. We find no reversible error.

The State's evidence showed that in November 1982, Thomas Rogers stole five (5) alpaca rugs from Curt Crebbs and sold them to the defendant.

Rogers testified for the State, admitted the theft of the rugs, and said he sold them to the defendant over a period of two (2) weeks. He believed that the defendant paid fifty dollars ($50.00) for one rug and perhaps one hundred dollars ($100.00) for a larger rug. According to Rogers, he told the defendant that the rugs had come from Crebbs's business place, and also told him that there was probably no way to trace the rugs.

Curt Crebbs testified that on November 9, 1982, he was driving down the street and saw one of his rugs at the defendant's shop. Later, Crebbs returned to the defendant's shop with police officers and recovered three (3) of his rugs. Crebbs placed a retail value on one of the rugs at four hundred fifty dollars ($450.00) and a wholesale value at two hundred twenty-five dollars ($225). Rogers had been employed

Gordon Ball, Appellate Counsel, Newport, and Steven Marshall, Trial Counsel, Maxwell & Associates, Sevierville, for appellant.

by Crebbs and after the theft, Rogers admitted to Crebbs that he had stolen the rugs. During the time Rogers worked for Crebbs, Rogers was always paid in cash.

According to the testimony of John Harrington, Crebbs's stepfather, he saw the stolen rugs in the defendant's place of business. The defendant told Harrington he was sorry he got the rugs and that he knew they were stolen, but that he was "high" on a combination of grass and booze.

Other evidence showed that during the police investigation, the defendant told Chief of Police Jack Baldwin that he had bought the rugs out of a blue van at a flea market in Maryville or Alcoa. Also, the defendant told Detective William Ogle, during a phone conversation, that he bought the rugs out of a van in Maryville.

The defendant testified and admitted he bought the rugs from Rogers, but said Rogers told him he had not stolen them, but rather had received them from Crebbs as pay for his services. The defendant said he paid Rogers one hundred fifty dollars ($150.00) for each rug.

We need not further detail the evidence. Suffice it to say the jury accredited the testimony of the State's witnesses and rejected the defendant's efforts to cast an innocent light on the affair.

■ We find that the evidence clearly shows that the rugs were stolen, and that the defendant received them with knowledge of their stolen character. *Keesler v. State*, 220 Tenn. 82, 414 S.W.2d 115 (1967).

Under the evidence in this record, any rational trier of fact would have been warranted in finding the defendant guilty beyond a reasonable doubt. T.R.A.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Next, during the State's cross-examination of the defendant, the State was permitted to ask him about a 1961 grand larceny conviction. The defendant says this was error. We disagree.

During direct examination, the defendant testified that when the police came to investigate, it really shook him up because "nothing like this had ever happened to me before." Also, on direct examination, the defendant, when asked by his counsel whether he had ever been convicted of another offense, answered "yes," and then related that he had been convicted of manslaughter in Texas in 1980. Obviously, this left the impression with the jury that this was his only prior conviction.

■ Under these circumstances, the State's question about the defendant's 1961 conviction of grand larceny was proper for impeachment purposes and was permissible under the rule stated in *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976). Further, in view of the defendant's direct testimony, we do not see that the State was obligated to give the defendant advance written notice of its intent to use such evidence, as *Morgan* would ordinarily have required. Until the defendant testified as he did, the State would have had no basis on which to attempt to refer to this prior conviction, and thus would have had no reason to furnish prior written notice of it.

Another complaint by the defendant is that the trial court failed to comply with Tenn.R.Crim.P. 12(e) regarding the hearing of some of his motions.

Rule 12(e) provides that motions made before trial shall be determined before trial, but the rule also authorizes the trial court to defer such hearings until the trial. The rule also requires the trial court to state its findings on the record.

The record shows that the trial court considered and overruled the defendant's various motions on the morning of the trial. We see nothing in the record to indicate that the defendant was prejudiced in any manner by the trial court not considering these motions at some time earlier than the morning of the trial.

The first trial of this case had resulted in a mistrial, and apparently the trial court was familiar from the prior trial with the evidence touching upon these motions.

■ The defendant specifically argues that he was not given an adequate hearing on his motion to suppress statements which he had made to the investigative officers. On the morning of the trial when this motion was taken up, defense counsel stated that his motion to suppress concerned statements made by the defendant to Detective W.H. Ogle over the telephone about "things being bought at a flea market in Maryville."

The record shows that this statement had been made during the investigative phase of the case and before the defendant was taken into custody. We note that a similar statement had been made to Chief Baldwin by the defendant, but this also was volunteered before the defendant was ever arrested.

The trial court overruled the defendant's motion to suppress, stating:

Overruled because it was a spontaneous response by this person who was being talked to by an officer who wanted to converse with him about it, said he did and he made the statement. He didn't have a chance to give him his *Miranda* warnings under the statement you've just given to me. As a matter of fact, it was an inquiry at that time. The court finds no reason to suppress the statement, the motion is overruled.

Clearly, the defendant's statements were admissible. His statements were voluntarily made during the investigative phase of the case and were not given in response to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court properly overruled the motion to suppress these statements.

■ Further, we find that the trial court's findings and reasons for overruling all of the defendant's motions were adequate to comply with Rule 12(e).

The defendant's final complaints concern a supplemental charge given to the jury and certain remarks made by the trial court to the jury after the jury began its deliberations.

The trial court initially charged the jury on the offense of receiving stolen property, generally explaining the law concerning this offense. However, the charge did not use the exact language of the pattern instruction on this offense. T.P.I.—Crim. 28.03.

At one point in its deliberations, the jury returned to the courtroom and asked a question. The question concerned the issue of whether the defendant knowingly received stolen property. Defense counsel and State's counsel both agreed that the trial court could orally state the issue. The court then stated to the jurors that they were discussing the right issue and that the issue was knowledge of the stolen character of the property.

Further, the record shows that the next morning, defense counsel, at the court's request, delivered to the bailiff of the jury a copy of the pattern instruction on receiving stolen property. The bailiff gave the copy to the jury.

The record shows that again defense counsel made no objection to this procedure and in fact affirmatively agreed to it.

■ It is elementary that every word of the judge's instructions to the jury should be in writing and read to the jury. Tenn.R. Crim.P. 30(c).

■ Clearly, the trial court's oral comments to the jury and its failure to personally read and deliver to the jury the supplemental charge were highly irregular and improper. However, since defense counsel interposed no objection to the trial court's actions regarding these matters, and in fact, affirmatively agreed to them, we conclude that the defendant has waived any complaint in this regard. Relief is not required to be given "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." T.R.A.P. 36(a).

We find no reversible error and the judgment of the trial court is affirmed.

O'BRIEN and CORNELIUS, JJ., concur.

OPINION ON PETITION TO REHEAR

DUNCAN, Judge.

The defendant has filed a petition to rehear requesting us to reconsider our ruling on his complaint about the trial court's jury instructions.

The defendant argues that his original trial counsel's failure to object to the trial court's actions regarding the jury instructions may not be considered "harmless error," citing *State v. Gorman*, 628 S.W.2d 739 (Tenn.1982).

As we stated in our original opinion, "defense counsel interposed no objection to the trial court's actions regarding these matters [the jury instructions], and in fact, affirmatively agreed to them," and thus we held that the defendant had waived this complaint.

In *Gorman, supra,* the Supreme Court said:

> We think it is inappropriate for the appellate courts to preside over the creation of a body of "harmless error law" revolving around the issue of failure of trial judges to restrain themselves from making oral remarks at a time when it is the obligation of the trial judge to deliver to the jury "every word" in writing. The orderly administration of criminal justice demands adherence to this requirement or its withdrawal from the operation of the harmless error rule, that prevails today.

628 S.W.2d at 740.

Notwithstanding the above comment, we must point out that in *Gorman* the Supreme Court did, in fact, hold that the instruction complaint under review was harmless. Moreover, unlike the present case, *Gorman* was not concerned with a waiver issue, which was the basis for our ruling in the instant case.

■ The defendant also contends that he should be granted relief on the grounds that his original trial counsel provided ineffective representation to him. He argues that his counsel was ineffective by failing to object to the trial court's actions regarding the jury instructions.

As stated by defendant's present counsel, who represented him at the motion for new trial hearing, the defendant did allege his ineffective assistance complaint in his motion for a new trial. However, no proof on this issue was offered at that hearing. Thus, with no proof in the present record on this issue, we may not presume any ineffectiveness on the part of the defendant's original trial counsel.

Accordingly, we find no merit to the arguments raised in the petition to rehear and same is hereby dismissed.

O'BRIEN and CORNELIUS, JJ., concur.