# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 1, 2009 Session

## STATE OF TENNESSEE v. KAREN MARABLE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-05290     Paula Skahan, Judge**

---

**No. W2008-02191-CCA-R3-CD  - Filed June 24, 2010**

---

The Defendant-Appellant, Karen Marable, was convicted by a jury in the Criminal Court of Shelby County of aggravated robbery, a Class B felony.  She was sentenced as a standard offender to nine years in the Tennessee Department of Correction.  On appeal, Marable claims: (1) the insufficiency of the evidence; (2) the trial court erred in responding to a jury question; and (3) her sentence was excessive.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Paul Springer, Memphis, Tennessee, for the Defendant-Appellant, Karen Marable.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Facts**.  Tamika Wilson testified that she managed a store called Crystal's in 2005.  She worked with Marable who served as an assistant manager.  Wilson said Marable was fired on November 8, 2005.  Wilson explained:

> There was a situation where some money came up missing and [Marable] and I was the only ones that did the deposit in the mornings, from the day before earnings.  And some money came up missing on her watch.  She was seen on camera going to the back office to count the money, instead of staying up front, as usual.  The money came up missing and the corporate

office decided that Ms. Marable had to have been the one responsible, so she was terminated.

On November 14, 2005, Wilson reported to work at between 8:30 and 9:00 a.m. She was responsible for opening the store, and she used her key to enter through the front door. She noticed that the alarm system had not been set the previous night. Wilson turned on the lights and walked towards the counter. She saw someone behind the counter wearing a ski mask. Wilson recognized this woman by her eyes. Wilson stated, "It was one of those mask[s] where it's not completely covering the eyes and . . . I recognized the eyes were Ms. Marable's[.]" After seeing Marable behind the counter, Wilson was hit in the back of the head with a pistol by another masked perpetrator. Wilson recognized the second perpetrator as Jamie Jones, another former employee. Wilson stated that both Marable and Jones held pistols.

Wilson testified that Marable and Jones started beating her in the head with their pistols. Wilson removed Marable's ski mask and saw the side of her face. Marable grabbed Wilson's keys and purse, which contained about two hundred and fifty dollars. Marable gave the keys to Jones who opened the store's safe. The safe was located by the counter. Wilson testified that Marable hit and choked her while Jones took money from the safe. Wilson said Marable "had some kind of hold on me, she was choking me and then she sat on my face and I passed out." When Wilson regained consciousness, Marable and Jones were gone. Wilson contacted the police, and she talked with them for about thirty minutes. She then went to the hospital and received treatment for the injuries to her head. Wilson later identified Marable from a photographic lineup.

On cross-examination, Wilson testified that she was not sure how much money was stolen from the safe. She further discussed the incident that led to Marable's firing:

About $700.00 was short one Monday when I came in[.] . . . Well, Ms. Marable had prepared the deposits for me and I never had to check behind Karen, it was always accurate. She was my assistant manager. I took the money on to the bank, then I was notified that the amount on the receipt was not the amount that was in the envelope. I called Ms. Marable when I got back to the store to see did she know anything about that money being missing and she said, I'm on my way. She came with the money.

Wilson said she questioned Marable about the missing money, and Marable denied having any knowledge of the situation. Wilson stated, however, that Marable "went into her own personal bank account and put the money back." Wilson denied that she stole the money that led to Marable's firing. Wilson said she fired Jones several months before the robbery.

Officer Tim Murphy of the Memphis Police Department testified that he went to Crystal's in response to an alleged robbery. He found Wilson alone in the store with bloody cuts on her face. Officer Murphy described the store as being in disarray with items knocked over and blood on the counter. He also found blood on the fax machine, phone, and stereo player. Officer Murphy testified that the back door was unlocked and there was no evidence of forced entry.

On cross-examination, Officer Murphy said he did not recall where the safe was located in the store. He stated, "I may have seen [the safe], but I just don't recall seeing it." Officer Murphy said the store had a video surveillance system; however, it "had been messed with, or tampered with." He testified that Wilson provided the names of Marable and Jones to the police. Officer Murphy stated that Wilson recognized one of the perpetrators by her physique and mannerisms Officer Murphy said Wilson told him that both perpetrators were armed with guns. Officer Murphy spoke with two men who worked next to the store. They saw "a silver type car" parked behind the store that morning. Officer Murphy checked the registration of the two names provided by Wilson, and he discovered that one of the perpetrators drove a silver Cavalier.

Cynthia Brown testified she worked the closing shift at Crystal's on the night before the robbery. Brown said the store closed at 10:00 p.m. That night, she received a phone call from Marable who "said that she was going to come up to the store to show me some pictures of her sister's baby." Brown testified that Marable "came into the store and she put her stuff down on the counter and said that she had to use the bathroom." The bathroom is located near the back door of the store. While Marable was in the bathroom, Brown performed her closing duties, which included counting money, placing money in a safe, and logging the money earned on a piece of paper. Marable then returned from the restroom. Brown stated:

> I got ready to enter out of the store and [Marable] asked me if–she wanted to do her code, do it still work in the alarm system. I told her that I didn't know that. So she said that if they fire anybody then their code shouldn't work. So she was like, let her try it. And she tried it. So the alarm system made the little noise, like it always do, and then we left out. So I thought that it was, like, locked.

Brown said she locked the front door before they left, but did not check the back door. Brown said Marable appeared to be mad at Wilson.

Dean Rowlison testified that he was the district manager for Crystal's. He went to the store after the robbery, and he determined that money had been stolen from the store's two safes. He stated:

I went behind the counter and I could see that both safe doors were open, we had two safes, one that holds cash drops and then [one] that holds spare change. They were both open and all [the] money that should have been in there was gone.

Rowlison was questioned about how he was able to determine the amount stolen from the safe that holds the cash drops. He stated:

Our P.O.S. system prints out, at the end of each shift and at the end of the day, how much money was taken in for sales during that day. It breaks it down between cash and credit cards, those are the only two forms of payment that we take. And I should have been able to go back there at that point in time, since no sales had been made on that day, open the safe up, take the money that was out of that safe, it would have been wrapped up in pieces of paper [and] would have stated the time and date that it was dropped. I should have been able to break it up between the two days and make the cash deposits, according to the P.O.S. print outs, but there was no cash there, at all.

At trial, Rowlison examined a printout from the P.O.S. system. It showed that the cash amounts from the Saturday and Sunday before the robbery were $1,660.99 and $1,619.67 respectively. Rowlison testified that the missing deposits totaled $2,280.66. Rowlison said three hundred dollars was also missing from the bottom safe.

Rowlison testified that he contacted the company in charge of his security system. He was faxed a list of the times when the store's security system was armed and disarmed. The fax showed that an invalid attempt was made to arm the system at 10:22 p.m. on the night before the robbery. The attempt was made by someone using a deleted code number. Rowlison testified that the deleted code number once belonged to Marable.

Rowlison said Marable was fired as part of larger staff changes. Problems arose at the store regarding missing inventory and damage to the surveillance system. Rowlison was unsure who was responsible, so he and his supervisors "decided the smart thing to do would be just to make some whole sale staffing changes." He did not believe that Marable had not stolen money from the store in the past. Rowlison testified that a video tape was not in the recorder when he arrived at the store after the robbery.

On cross-examination, Rowlison acknowledged that the amount in the safe did not always match the amount stated on the printout from the computer system. He did not, however, believe it was realistic for the safe to be empty. Rowlison testified that three hundred dollars was always kept in the bottom safe in order to break large bills.

Officer Joseph Poindexter of the Memphis Police Department testified that he spoke to Wilson at the hospital after the robbery. He noticed the injuries to her head. Officer Poindexter said Wilson provided the names of two former co-workers, including Marable, who were responsible for the robbery. He contacted Marable by phone, and she agreed to come to the police station. The police obtained a warrant to search Marable's home and found various merchandise sold at the store. Officer Poindexter said the amount of merchandise was unusual, as "it was like a small store within her house." Officer Poindexter testified that Wilson identified Marable in a photographic lineup.

Following Officer Poindexter's testimony, Marable told the trial court that she did not wish to testify. The trial court then read the jury charge. It went through the elements of aggravated robbery and its lesser-included offenses, including aggravated assault. At the end of the jury charge, the trial court told the jury:

> When you retire to consider your verdict in this indictment you will first inquire, is the defendant guilty of Aggravated Robbery as charged? If you find the defendant guilty of this offense, beyond a reasonable doubt, your verdict should be,
>
> > "We, the Jury, find the defendant guilty of Aggravated Robbery as charged in the indictment."
>
> If you find the defendant not guilty of this offense, or if you have a reasonable doubt of his guilt of this offense, you will acquit him thereof and then proceed to inquire whether or not he is guilty of Facilitation of Aggravated Robbery as included in this indictment.

The trial court addressed in a similar, methodic fashion when it was appropriate to consider the remaining lesser-included offenses, including aggravated assault. After the completion of the jury charge, the closing arguments were made. The jury then began its deliberations.

After deliberating for two hours, the jury sent a note to the trial court. The trial court discussed the note with the State and defense counsel. Defense counsel proposed that the trial court should restate the original instruction. Defense counsel did not, however, assert that the trial court's response needed to be in writing. The trial court responded to the jury as follows:

We have here a question and your comments, your request:

"We are still deliberating, but we have nine in agreement of aggravated robbery and three not in agreement, all are in agreement of aggravated assault, where do we proceed from here?"

First, please don't give us numbers as to where you all are in the future. They really don't like us to have that, Appellate Court's don't.

The law is very clear that you are not to go beyond aggravated robbery, unless you reach an [sic] unanimous verdict, guilty, or not guilty. Do you follow what I'm saying? So you shouldn't be reaching aggravated assault, or any of the other lesser includeds.

Defense counsel did not object after the trial court completed its response. The jury then deliberated for another hour and fifteen minutes. The jury found Marable guilty of aggravated robbery. Defense counsel polled each of the jurors, and each affirmed the guilty verdict.

**Sentencing Hearing**. Marable called two witnesses who testified to her good character. Sergeant Henry Sykes of the United States Army testified that he was in the same unit as Marable. He described Marable as an honest and reliable person. Sergeant Sykes was "shocked" by Marable's conviction because it was "out of her character." Sergeant Tramaine Walker of the United States Army testified that he was Marable's section sergeant. He said Marable was a supply specialist, which he described as a "very important job." Sergeant Walker had known Marable for three years and stated that her character was excellent. He was surprised by her conviction because it went against everything that he knew about her.

Wilson testified that she was treated at the hospital for the blows to her head, and she received stitches underneath her eye and across her forehead. Wilson had visible scars where the stitches were. As a result of the robbery, she had become "real paranoid" and less social. Wilson also started having severe migraines for which she took medication.

Marable testified that Wilson was responsible for the theft that led to her termination. Marable said she provided Wilson with five hundred and eighty-five dollars of her personal money to help make up for the missing funds. Marable felt betrayed by Wilson, and she threatened Wilson over the phone. Marable testified that Jones encouraged her to get revenge against Wilson. Marable admitted that she went to the store the night before the robbery and made sure the alarm system was not set. She admitted to illegally entering the store with Jones the next morning and waiting for Wilson to arrive. Marable also admitted to fighting Wilson and punching her in the back of the head. Marable denied possessing a weapon. She also denied stealing anything from Wilson or the store. After leaving the store, Marable learned that Jones possessed a gun. On cross-examination, Marable said she was

charged with vandalism in 1998; however, this charge was dismissed when she made restitution payments. She was also charged with driving on a suspended license in 2005 or 2006.

Following the testimony at the sentencing hearing, the State and defense counsel set forth their arguments regarding the applicable enhancement and mitigating factors. The trial court then made the following findings:

> As far as enhancement factors. Based on what I understand the proof to be that we've heard in this case, the defendant has a previous history of criminal behavior, in addition to those necessary to establish the appropriate range.

> I think that from the trial testimony there was proof that there had been other incidents involving Ms. Marable taking money from the company that wasn't authorized.

> There was testimony that she had taken a number of the novelty items without paying for them. And there was, in fact, a mini-store in her home when the police arrived.

> There was a prior arrest for vandalism, which apparently was dismissed after she paid restitution. There was a prior arrest for driving on a revoked, or suspended license, which I am not giving much weight, at all, to this prior behavior, because we don't have any prior convictions, but I do think that it is entitled to some weight.

> Number two, the defendant was a leader in the commission of the offense involving two, or more criminal actors.

> I think that it is very clear from the testimony of Ms. Wilson during the trial, as well as the testimony of Jamie Jones and I understand that Ms. Jones does have a reason to put this off on Ms. Marable, but it seems to me it fits with the testimony of Ms. Wilson that Ms. Marable did have the grudge against Ms. Wilson and she believed [she] was responsible for her firing.

> I have a hard time believing Ms. Marable spent whatever it was, $580.00, but whatever the figure was that she stated here today, to help Ms. Wilson and was still fired and that was the reason, I think, that she was just mad that she lost her job and she built this up for quite awhile and was

determined to get revenge on Ms. Wilson and decided that Jamie Jones would be a good partner.

I think Ms. Jones had been fired a few months before and was talked into it by Ms. Marable. According to Ms. Jones, Ms. Marable brought the weapon that Ms. Jones was to use over to Ms. Jones' house and they each brought weapons to Crystal's.

Ms. Marable is the one with the military background and has more sophistication and really should have known better. I believe she was the leader. I think the proof is pretty clear on that, with what occurred once Ms. Wilson walked into the Crystal's, whatever you want to call it, sales area.

. . . .

I do think that this was an especially horrible robbery that took place, the way that Ms. Marable treated Ms. Wilson. Whether it rises to number five. And the beating around the head area with the guns. Numbers five and six, personal injury is inflicted upon the victim, being particularly great.

The scar, you can still see below Ms. Wilson's left eye, especially, that she will have with her the rest of her life, I guess, unless she has plastic surgery. And the scar[r]ing on her forehead. Ms. Marable sitting on her until she lost consciousness. It's just horrible.

Whether that rises to a level the Appellate Courts think is sufficient, I'm going to find enhancement factors five and six to be present.

All right. Mitigation. You know, I can't find mitigation, that the defendant acted under strong provocation. [Losing] your job and blaming your manager. Or, substantial grounds exist tending to excuse, or justify criminal conduct through failing to establish a defense.

Abhorrent behavior, maybe. The problem is, we've got testimony regarding prior thefts from the store. We've got testimony regarding prior vandalism. If it were just this one crime, you know, with the prior military history, I certainly would find it[.]

Defense counsel objected to the trial court's consideration of the testimony regarding the prior thefts from the store. After addressing the objection, the trial court continued:

Okay. What I'm going to find is, in this particular case, this is not abhorrent behavior for her, based on what I believe to be some problems in her past.

I will find, however, based on her military history, the testimony that she put forth from the two staff Sergeants, based on–I think she had a couple years of college and we will mark the presentence report as an exhibit and I will consider that as mitigation.

She appears to have a decent work history, also.

I do believe Ms. Marable to be a range I offender, the sentencing range is eight to twelve years, Tennessee Department of Corrections. We have essentially no criminal history and we'll have no criminal history, we have some criminal behavior.

We do have a horrible crime that was committed. I really don't see any remorse from Ms. Marable, whatsoever. I see her minimizing what she did. Not accepting responsibility, as I had hoped she would do today. And essentially admitting to an aggravated assault. That was justified based on Ms. Wilson's horrible conduct.

I'm going to sentence Ms. Marable to nine years as a range I offender at 30%. I am not going to impose a fine.

After sentencing was completed, Marable filed a motion for new trial that was denied by the trial court. She then filed a timely notice of appeal.

## ANALYSIS

**I. Sufficiency of the Evidence**. Marable claims the evidence was insufficient to support her conviction for aggravated robbery. Specifically, she argues, "There is no evidence whatsoever that the victim was ever threatened with a gun or that anything other than an aggravated assault took place." The State contends a rational jury could have found that Marable committed aggravated robbery. Upon review, we agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn.1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Marable was convicted of aggravated robbery, which is defined under Tennessee Code Annotated section 39-13-402(a) as follows:

(a) Aggravated robbery is robbery as defined in § 39-13-401:

(1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or

(2) Where the victim suffers serious bodily injury.

Section 39-13-401(a) states:

(a) Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear.

Here, the testimony at trial supported the guilty verdict. Marable's claim that there was "no evidence whatsoever that the victim was ever threatened with a gun" simply ignores Wilson's testimony. Wilson testified that Marable repeatedly struck her in the face with a

pistol while Jones stole money from the store's safe. This testimony alone is sufficient to show that the robbery was "[a]ccomplished with a deadly weapon." T.C.A. § 39-13-402(a)(1). Marable's assertion that there was no evidence of a robbery is also unfounded. Wilson testified that Marable stole her purse, which contained two hundred and fifty dollars, along with money from the store's safe. Brown testified that she worked the night before the robbery. She counted the money earned that night and placed it into the safe. The store's district manager testified that $2,280.66 was missing from the safe based on information from the store's computer system. Based on the foregoing, a rational jury could have found that Marable committed aggravated robbery. Marable is not entitled to relief on this issue.

**II. Trial Court's Response to Jury Question**. Marable claims the trial court erred in responding to a question from the jury. First, she argues the response constituted a supplemental instruction that needed to be in writing. Second, Marable contends that the response amounted to plain error because it misled the jury. The State asserts Marable waived this issue by failing to raise a contemporaneous objection. The State also claims that the trial court's response was proper.

We agree with the State that Marable waived this issue by not raising a contemporaneous objection. The record shows that the trial court met with the State and defense counsel to discuss the appropriate response to the jury's question. Defense counsel suggested that the trial court restate the jury instruction regarding the lesser-included offenses. He did not assert that the response needed to be in writing. After the trial court gave its oral response to the jury, defense counsel did not raise an objection. As a result, this issue is waived. See T.R.A.P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); State v. Burns, 979 S.W.2d 276, 295 (Tenn. 1998) (quoting State v. Tune, 872 S.W.2d 922, 930 (Tenn. Crim. App. 1993) ( "A party cannot witness misconduct on the part of the court, await the result of the verdict, and then, if it is against him or her, object to the alleged misconduct."); State v. Brandon Goods, No. W2005-00481-CCA-R3-CD, 2006 WL 1381589, at *4 (Tenn. Crim. App., at Jackson, May 18, 2006); State v. Ronald Cox, W2000-02238-CCA-R3-CD, 2001 WL 1584133, at *4 (Tenn. Crim. App., at Jackson, Nov. 29, 2001); State v. Crocker, 697 S.W.2d 362, 365 (Tenn. Crim. App. 1985). We note that the trial court's response to the jury question does not fall within the parameters of Rule 30(b) of the Tennessee Rules of Criminal Procedure.

Because Marable did not raise a contemporaneous objection, we may only review this issue for plain error. See T.R.A.P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error

on appeal.").  In State v. Adkisson, this court stated that in order for an error to be considered plain:

>   (a) the record must clearly establish what occurred in the trial court;
>   (b) a clear and unequivocal rule of law must have been breached;
>   (c) a substantial right of the accused must have been adversely affected;
>   (d) the accused did not waive the issue for tactical reasons; and
>   (e) consideration of the error is "necessary to do substantial justice."

899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (citations omitted).  All five factors must be shown, and it is not necessary to consider every factor if it is obvious that one of the factors cannot be established.  State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000).

Consideration of this issue is not necessary to do substantial justice because no clear and unequivocal rule of law was breached.  In addressing the jury question, the trial court was authorized to give a supplemental instruction, provided it fairly submitted the legal issue and did not mislead the jury regarding the applicable law.  State v. Jamelle M. Felts, No. M2007-00945-CCA-R3-CD, 2008 WL 2521663, at *4 (Tenn. Crim. App., at Nashville, June 24, 2008) (citing State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998) and State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995)).  Reversal is not required unless the defendant was prejudiced by the trial court's response.  State v. Mays, 677 S.W.2d 476, 479 (Tenn. Crim. App. 1984).  Here, the first part of the trial court's response instructed the jury not to "go beyond aggravated robbery" until it had reached a unanimous verdict on the charged offense.  This part accurately stated the law and was consistent with the jury charge.  The latter part of the response stated, "So you shouldn't be reaching aggravated assault, or any of the other lesser includeds."  We recognize that this latter part suggested that the jury should not consider the lesser-included offenses; however, when read in conjunction with the first part of the response, it did not mislead the jury regarding the applicable law.  We are not persuaded by Marable's claim that the jury was led to believe that it had to convict her of aggravated robbery.

We also disagree with Marable's claim that Rule 30(c) of the Tennessee Rules of Criminal Procedure required that the trial court's response be in writing.  This court has repeatedly stated that supplemental instructions do not need to be in writing if they merely clarify prior written instructions.  See State v. John William Matkin, III, No. E2005-02946-CCA-R3-CD, 2007 WL 4117362, at *8 (Tenn. Crim. App., at Knoxville, Nov. 19, 2007) (citing State v. Tywan Faulk, No. M1999-01124-CCA-R3-CD, 2000 WL 1278375, at *7 (Tenn. Crim. App., at Nashville, Aug. 31, 2000)); see also State v. Bondurant, No. 01C01-9501-CC-00023, 1996 WL 275021, at *14 (Tenn. Crim. App., at Nashville, May 24, 1996); but see Crocker, 697 S.W.2d at 365.

We conclude that the trial court's response did not constitute plain error. Accordingly, Marable is not entitled to relief on this issue.

**III. Sentencing**. Marable claims her sentence was excessive because the trial court improperly found four enhancement factors were applicable. She also asserts that the trial court failed to properly apply and weigh several mitigating factors. The State claims the trial court did not err in sentencing Marable. Upon review, we agree with the State.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Our review is de novo, without a presumption of correctness, if the trial court applied inappropriate mitigating or enhancement factors or otherwise failed to follow the principles of the Sentencing Act. State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008). The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Commission Comments.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See T.C.A. § 40-35-210(b); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

The Tennessee Supreme Court has stated that the 2005 Amendments to the Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Carter, 254 S.W.3d at 344. In sentencing a defendant, the trial court must consider the sentencing guideline that suggests an adjustment to the defendant's sentence when enhancement or mitigating factors are present; however, these factors under the guideline are merely advisory rather than binding upon a trial court's sentencing decision. Id.; see also T.C.A. § 40-35-210 (2006). The weight given to each enhancement or mitigating factor is left to the sound discretion of the trial court. Id. Thus, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

Marable was sentenced as a standard offender to nine years in the Tennessee Department of Correction. The sentencing range for aggravated robbery, which is a Class B felony, is between eight and twelve years. T.C.A. § 39-13-402(b) (2005); T.C.A. § 40-35-112(a)(2) (2005).

The trial court found that the following enhancement factors were applicable under Tennessee Code Annotated section 40-35-114:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;

(5) The defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense;

(6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great[.]

The trial court found that enhancement factor (1) was applicable based on testimony that Marable previously stole money and novelty items from the store. The trial court also gave some weight, though minimal, to Marable's prior arrests for vandalism and driving on a suspended license. Marable contends this enhancement factor was inapplicable because evidence was not presented that she stole from the store and because the trial court cannot consider expunged arrests as evidence of criminal behavior. We disagree with both contentions. Wilson testified that Marable was fired because her superiors determined that she was responsible for stealing seven hundred dollars from the store. The store's district manager testified that inventory was missing from the store, and Officer Poindexter described Marable's home as "like a small store[.]" In considering Marable's history of criminal behavior, the trial court was also permitted to assess her expunged arrests. See State v. Galen Dean Eidson, No. M2000-02390-CCA-R3-CD, 2001 WL 922187, at *5 (Tenn. Crim. App., at Nashville, Aug. 16, 2001) (citing State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999) ("The testimony and evidence of the criminal acts preceding the arrest are admissible as evidence of prior bad acts or evidence of social history even if expungement is later obtained."); see also State v. Kelley, 34 S.W.3d 471, 481 (Tenn. Crim. App. 2000) ("[T]he criminal acts for which the defendant received diversion can be considered as prior criminal behavior under enhancement factor (1).").

The trial court also found that enhancement factor (2) was applicable. This factor requires only that Marable was *a* leader, not *the* leader, during the commission of the offense. See State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). At the sentencing

-14-

hearing, Marable admitted that she manipulated the store's security system on the night before the robbery. As a former employee, Marable knew when the store opened and where the store's money was located. Wilson opened the store on the morning of the robbery and saw Marable behind the counter wearing a ski mask. Wilson testified that Marable stole her keys which she gave to Jones to open the safe. Wilson said Marable repeatedly struck her in the head with a pistol and sat on her head until she passed out. Marable played a significant role during the preparation and commission of the offense. We recognize that it was improper for the trial court to consider Jones' testimony from a separate trial; however, based on the proof at trial, enhancement factor (2) was clearly applicable.

Enhancement factors (5) and (6) were also present because the proof showed that Marable treated Wilson with "exceptional cruelty" and Wilson's injuries were "particularly great." Wilson testified that Marable struck her in the face for several minutes with a pistol. Wilson also said Marable choked her and ultimately caused her to lose consciousness. Officer Murphy viewed Wilson soon after the robbery, and Wilson had suffered multiple injuries to her face. At the sentencing hearing, Wilson testified that she had visible scars on her face from the beating. The robbery caused her to become paranoid, and she started having migraines for which she took medicine. The record supports the trial court's finding that these enhancement factors were applicable.

Marable also claims the trial court "did not adequately identify or evaluate the mitigating factors of the appellant." Specifically, she refers to the testimony of Sergeant Sykes and Sergeant Walker, her thirteen years of military service, and the absence of criminal convictions in her record. Our review of the trial court's findings shows that each of these mitigating factors was taken into consideration. Marable argues that the trial court failed to adequately weigh these mitigating factors. As stated above, under 2005 Amendments to the Sentencing Act, the weight given to mitigating factors is left to the sound discretion of the trial court. See Carter, 254 S.W.3d at 344.

The record shows that the trial court considered the appropriate mitigating and enhancement factors, and that Marable's sentence comports with the principles of the Sentencing Act. As a result, the trial court acted within its discretion in sentencing Marable one year above the statutory minimum for aggravated robbery. Marable is not entitled to relief on this issue.

**CONCLUSION**

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE