IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 18, 2021 Session

**STATE OF TENNESSEE v. EMMANUEL WALLACE**

**Appeal from the Circuit Court for Montgomery County**
**No. CC-15-CR-1209      Jill Bartee Ayers, Judge**

———————————————

**No. M2020-00484-CCA-R3-CD**

———————————————

Emmanuel Wallace, Defendant, and co-defendant Joshua Aretz were indicted for their roles in the shooting death of Savon Easterling in Clarksville in August of 2015. Defendant was indicted for premeditated murder, felony murder, and aggravated robbery. Defendant elected to proceed to trial. After the presentation of the proof, the trial court granted a motion for judgment of acquittal with respect to the offense of aggravated robbery. The trial court submitted the lesser-included offenses of attempted aggravated robbery, attempted robbery, and attempted theft of property for the jury's consideration. After deliberating, the jury found Defendant guilty of second degree murder and felony murder but not guilty of attempted aggravated robbery and all lesser included offenses. The trial court sentenced Defendant to an effective life sentence after merging the convictions. After the denial of a motion for new trial, Defendant appealed to this Court. On appeal, Defendant argues that the jury's verdict was inconsistent because he was found guilty of felony murder and not guilty of the underlying felony. He also argues that the trial court improperly responded to a jury question in violation of Tennessee Rule of Criminal Procedure 30(c). After a thorough review of the record and the briefs, we determine that Defendant is not entitled to relief. Consequently, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., J., joined. NORMA MCGEE OGLE, J., concurred in results only.

Adrienne Gilliam Fry, Clarksville, Tennessee, for the appellant, Emmanuel Wallace.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Robert Nash and Arthur Bieber, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

The victim, Savon Easterling, a Fort Campbell soldier, was dating Jayde Hodge at the time of his death. Ms. Hodge started dating the victim while she was still dating co-defendant Aretz. Ms. Hodge and co-defendant Aretz dated for three or four years. They broke up about a month prior to the victim's death after Ms. Hodge had an abortion without co-defendant Aretz's knowledge. Defendant and co-defendant Aretz were best friends.

Ms. Hodge was living with the victim when she and co-defendant Aretz ended their relationship. After the breakup, co-defendant Aretz sent Ms. Hodge a threatening text message a few weeks before the killing. In the text, he claimed he knew the victim's address and called him a "dead man." Ms. Hodge told the victim about the text but told him not to worry.

On August 9, 2015, the victim went to the grocery store. Ms. Hodge was at the victim's home when the victim returned from the store. She heard his keys "jingle" at the front door. The next thing she heard was a series of gunshots and a "thud on the front door." When she opened the door, she discovered the victim lying on the ground bleeding. Ms. Hodge did not see anyone outside. She called 911 and applied pressure to the victim's wounds.

By the time police and emergency medical personnel arrived, the victim was dead. Officers Christopher Bailey and Detective Sunisa Hamilton were among the first to respond to the call at the victim's house. When they arrived, they found the deceased victim on the ground outside the front door. He was holding a Glock 9-millimeter pistol in his right hand. The pistol had a bullet in the chamber and was equipped with an extended magazine.

During the investigation, police located four .380 caliber shell casings and six .40 caliber shell casings. There were no 9-millimeter shell casings found at the scene. Police also recovered five bullets from the victim's home and five bullet fragments from the scene. All of the .40 caliber shell casings and bullets found at the scene were fired from the same gun.

The medical examiner determined that the victim received two gunshot wounds. The fatal wound, to the neck, was fired from a distance of two to three feet away at a downward trajectory.

Defendant and co-defendant Aretz were eventually arrested for their role in the victim's death. Defendant's car was seized during the investigation. Inside the car, officers discovered a black bag. The bag contained a pair of gloves, a black ski mask, a black and gray hooded sweatshirt, a black and red t-shirt, and a black bandana. The right glove was stained with blood that contained the victim's DNA and the left glove was stained with blood that contained DNA from Defendant.

Defendant was interviewed by the police. Defendant initially denied being in Clarksville when the victim was murdered. After he was incarcerated, however, Defendant told cellmate Joshua Bryan Johnson that he took part in the murder. According to Mr. Johnson, Defendant told him that his intent was to rob someone for "rims and money" with co-defendant Aretz. Once the men were on the way to Clarksville, co-defendant Aretz told Defendant that "there was a soldier that was sleeping with his old lady and that he was going to kill him." Defendant and co-defendant Aretz went to the victim's home. Defendant was armed with a .380 caliber gun, and co-defendant Aretz was armed with a .45 caliber gun. They waited for the victim outside the house. When he arrived, Defendant ordered him to get on the ground. They "shot him ten times, five times a piece."

Defendant told Mr. Johnson that he gave the .45 caliber gun to someone and that he hid the .380 caliber gun in the woods. Officers were able to recover the .380 caliber gun based on the information they received from Mr. Johnson. Ballistics testing revealed that the .380 caliber shell casings and bullet fragments recovered at the scene were fired through Defendant's .380 caliber handgun.

Defendant eventually gave another recorded interview a few months later. As part of this interview, he completed a statement. Part of the statement read as follows:

I went to Josh [Aretz's] house . . . he told me that he got a robbery set-up. . . . I didn't know he wanted to kill this person that's why I tagged along. . . . He [the victim] turned around and it looked like he had a gun in his waistband and was kin[d]a grab[bing] for it. [Co-defendant Aretz] was behind me and started to fire [h]is .40. It shot like 3 times before I started to. I looked away and I didn't mean too. I didn't want to do it at all. I'm sorry.

Defendant did not testify or present any proof.

At the conclusion of the State's proof, Defendant made a motion for judgment of acquittal. The trial court granted the motion in part, determining that the evidence was not sufficient to establish aggravated robbery. However, the trial court determined that there was sufficient evidence to submit the lesser-included offenses of attempted aggravated robbery, attempted robbery, and attempted theft of property.

During deliberation, the jury submitted a noted to the trial court, asking the following:

> The court has dismissed [C]ount 3 [aggravated robbery]. We the Jury agree with the dismissal and do not want to bring it back into effect. Do we still need to mark an item on the form[?]

> On Count 3 [aggravated robbery] if we wish that it stays as dropped do we need to consider in the document as not guilty[?]

Without objection from either party, the trial court submitted a typewritten instruction to the jury. The instruction read:

> The Court has dismissed the charge of aggravated robbery as indicted in [C]ount three. However, as instructed, you are required to consider the lesser[-]included offenses of attempted aggravated robbery, attempted robbery, and attempted theft of property. You are required to complete the verdict form for [C]ount three.

After deliberating, the jury found Defendant guilty of second degree murder and felony murder but not guilty of any of the lesser-included offenses in Count 3.

Defendant filed a motion for new trial. In the motion, he argued that the evidence was insufficient to sustain the conviction for felony murder because he was not found guilty of the underlying felony. In an amended motion, Defendant argued that the trial court erred by failing to answer the jury question in open court. The trial court held a hearing and denied the motion for new trial. Defendant filed a timely notice of appeal. He raises the same issues in this Court.

*Analysis*

First, Defendant argues that the evidence is insufficient to support the conviction for felony murder because the jury found Defendant not guilty of the underlying felony, aggravated robbery. Specifically, Defendant argues that second degree murder cannot be used "as the elevation offense" for felony murder. In other words, because the jury found Defendant not guilty of the underlying felony, his conviction for felony murder should be reversed. The State disagrees, pointing out that Defendant is not entitled to relief because of inconsistent verdicts.

- 4 -

As relevant here, first-degree felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery[.]" T.C.A. § 39-13-202(a)(2). No culpable mental state is required for conviction of felony murder except the intent to commit the underlying felony. *Id.* § 39-13-202(b). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). A robbery is aggravated when it is "[a]ccomplished with a deadly weapon" or "[w]here the victim suffers serious bodily injury." As pertinent here, criminal attempt requires proof that a person "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3). Proof of the intention to commit the underlying felony and at what point it existed is a question of fact to be decided by the jury after consideration of all the facts and circumstances. *State v. Buggs*, 995 S.W.2d 102, 107 (Tenn. 1999).

In a light most favorable to the State, the proof showed that Defendant and co-defendant Aretz planned to go to Clarksville to rob the victim for "rims and money." On the way there, co-defendant Aretz informed Defendant that he wanted to kill the victim for sleeping with his ex-girlfriend. They arrived at the victim's house, waiting outside for the victim to arrive, and shot the victim multiple times. Bullets and shell casings from Defendant's gun were found at the scene of the victim's death. Defendant admitted that he shot his weapon. Moreover, Defendant had a bag in his trunk with dark-colored clothing and gloves. The gloves contained the blood of the victim. In our view, there was sufficient evidence for the jury to convict Defendant of felony murder.

Defendant's argument that the acquittal on the charge of attempted aggravated robbery precluded the jury from finding him guilty of felony murder is flawed. The Tennessee Supreme Court has clearly stated that a defendant is not entitled to relief on this basis, explaining as follows:

> Inconsistent verdicts on multiple charges against a single defendant may take the form of an inconsistency between a conviction and an acquittal. For instance, a defendant may be charged with committing both a felony murder and the predicate felony. The jury then may convict the defendant of the felony murder but acquit the defendant of the predicate felony. It is well-settled under Tennessee law that the defendant is not entitled to relief from the felony murder conviction in this situation as long as the evidence was sufficient to support his murder conviction. *See, e.g., State v. Shane Michael Grogger*, No. M2008-02015-CCA-R3-CD, 2009 WL 3832921, at *14, *17 (Tenn. Crim. App. Nov. 17, 2009), *perm. app. denied* (Tenn. Apr. 14, 2010); *State v. Tony Scott Walker*, No. 02C01-9704-CC-00147, 1997 WL 746433,

at *3-5 (Tenn. Crim. App. Dec. 3, 1997), *perm. app. denied* (Tenn. Sept. 21, 1998). *Accord Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn. 1973) ("This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.").

*State v. Davis*, 466 S.W.3d 49, 72 (Tenn. 2015). We have already determined that the evidence was sufficient to support the felony murder conviction. Accordingly, Defendant is not entitled to relief on this issue.

## *Jury Question*

Next, Defendant contends that the trial court erred by responding to a jury question without bringing the jury back into open court in violation of Tennessee Rule of Criminal Procedure 30(c). The State argues that because the jury found Defendant not guilty of the offenses related to the charge in question, any error was harmless.

As recounted in the factual background section above, during deliberation, the jury submitted a question to the judge about the dismissal of Count 3. The trial court submitted a typewritten response without bringing the jury back into open court. At the hearing on the motion for new trial, the trial court acknowledged that an oral response was not provided to the jury. The trial court stated on the record that its "practice" for a "simple issue" was to "bring the attorneys back, [to] review the questions" and answers and "if there's no objection, then [the court] just submit[s] that back to the jury." Neither Defendant nor the State objected to the supplemental jury charge herein.

It is well-settled that a trial court may provide supplemental instructions in response to jury questions. *State v. Forbes*, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995). When supplemental instructions are given by a trial court, the better practice is to admonish the jury not to place undue emphasis on the supplemental instructions. *Leach v. State*, 552 S.W.2d 407, 408 (Tenn. Crim. App. 1977). However, the issue of whether the failure to do so amounts to reversible error depends upon whether the omission might reasonably be expected to prejudice the Defendant in light of the entire record. *Id.* (citing *Burton v. State*, 394 S.W.2d 873 (Tenn. 1965)).

Defendant argues that the trial court violated Rule 30 of the Tennessee Rules of Criminal Procedure, which provides that jury instructions shall be reduced to writing for the jury to have during deliberations and that the "written charge *shall* be read to the jury and taken to the jury room by the jury when it retires to deliberate." Tenn. R. Crim. P. 30(c) (emphasis added).

Defendant cites this Court's opinion in *State v. Dylan Brewer*, No. W2017-01725-CCA-R3-CD, 2019 WL 1109917, at *1 (Tenn. Crim. App. March 11, 2019), *no perm. app. filed*, to support his argument. In *Dylan Brewer*, a panel of this Court determined that the trial court erred by failing to orally instruct the jury as to the definitions of intentionally and knowingly. Even though the later supplemented written charge submitted to the jury included the definitions, because Rule 30 requires jury instructions to be provided to the jury both orally and in writing, the trial court erred. *Id.* at *7-8. While recognizing that failure to properly instruct the jury on a material element of an offense is a non-structural, constitutional error subject to harmless error review, in *Dylan Brewer,* we determined that the error was not harmless because the charge "failed to fairly submit the legal issues to the jury," especially in a case where the proof was largely circumstantial. *Id.*

This case, in our view, is distinguishable from *Dylan Brewer*. In *Dylan Brewer*, the jury instruction at issue, defining the mens rea of the offense, was completely omitted by the trial court in the initial jury instructions. Here, the answer to the jury question instructed the jury to follow the jury charge, which had already been read in open court and reduced to writing as required by Rule 30. The trial court told the jury in its answer to consider the lesser-included offenses submitted in Count 3 and to mark the verdict on the form, as it had already been instructed. Moreover, in a footnote in *Dylan Brewer*, we acknowledged that:

> Several unpublished opinions of this Court have indicated that Rule 30(c)'s requirement that the trial court's instructions shall be in writing does not apply to supplemental instructions given in response to jury questions during deliberation. *See State v. Karen Marable*, No. W2008-02191-CCA-R3-CD, 2010 WL 2553645, at *10 (Tenn. Crim. App. June 24, 2010) (citing *State v. John William Matkin III*, No. E2005-02946-CCA-R3-CD, 2007 WL 4117362, at *8 (Tenn. Crim. App. Nov. 19, 2007), *perm. app. denied* (Tenn. Apr. 7, 2008); *State v. Tywan Faulk*, No. M1999-01124-CCA-R3-CD, 2000 WL 1278375, at *7 (Tenn. Crim. App. Aug. 31, 2000), *perm. app. dismissed* (Tenn. Nov. 28, 2000)), *no perm. app. filed*.

*Id.* at *5 n.4. These cases, like the case herein, involved instructions that "merely clarif[ied] prior written instructions," rather than instructions that were erroneously omitted from the original charge. *Karen Marable*, 2010 WL 2553645, at *10; *but see State v. Bowers*, 77 S.W.3d 776, 791 (Tenn. Crim. App. 2001) (applying Rule 30(c) to supplemental instruction); *State v. Crocker*, 697 S.W.2d 362, 365 (Tenn. Crim. App. 1985) (same). In our view, there was no error because the supplemental written instruction merely clarified the written charge, which had already been read aloud and submitted to the jury in writing. Moreover, the jury ultimately acquitted Defendant of the charged offense about which he complains on appeal. Consequently, he cannot prove prejudice as a result of the trial

court's failure to orally give the supplemental instruction. Defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE