FILED

03/11/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 6, 2018 Session

## STATE OF TENNESSEE v. DYLAN BREWER

**Appeal from the Criminal Court for Shelby County**
**No. 16-06473       Paula L. Skahan, Judge**
**———————————————————**

### No. W2017-01725-CCA-R3-CD
**———————————————————**

Defendant, Dylan Brewer, was convicted of one count of aggravated robbery and was sentenced to eight years. On appeal, Defendant argues that the trial court erred by failing to orally instruct the jury as to the definitions of intentionally and knowingly, that the evidence is insufficient to support his conviction for aggravated robbery, and that the trial court erred in excluding Defendant's written statement after deeming portions of the statement to be self-serving. Upon our review of the record, we conclude that the evidence is sufficient to sustain Defendant's conviction. Additionally, we conclude that any error with regard to the exclusion of Defendant's statement was harmless because the disputed portion was admitted to clarify an earlier mischaracterization and Defendant testified. However, we conclude that the trial court committed plain error by failing to read to the jury the written instructions defining the terms intentionally and knowingly because the *mens rea* is an essential element of the offense and was a contested issue at trial. Therefore, we reverse the judgement of the trial court and remand the case for a new trial before a properly instructed jury.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Stephen Bush, District Public Defender; Phyllis Aluko (on appeal), Samuel Christian, and Andrea Prater (at trial), Assistant District Public Defenders, for the appellant, Dylan Brewer.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd and

Charles Summers, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On December 17, 2015, Defendant was indicted by the Shelby County Grand Jury for one count of aggravated robbery. His codefendant, Carnesia Pierce, was indicted for facilitation of aggravated robbery and accessory after the fact. Defendant and Codefendant Pierce were tried jointly in April 2017.[1] The following facts were adduced at trial.

The victim, Terrell Houston, was a senior in high school in the fall of 2015. While on Facebook one day, the victim saw Defendant's post, under the name "RemyBoy Dylan," offering a True Religion jogging suit for sale for $150. The victim sent a message to Defendant's inbox expressing his interest in purchasing the jogging suit. After some back and forth communication through Facebook and text messages, the victim and Defendant arranged to meet at the victim's house on Dunnavant Street on September 16, 2015, between 5:30 and 6:00 p.m.

At the agreed-upon time, Defendant called the victim to let him know he was on the way and would be in a red car. The victim went outside and saw a red car pass his house and then turn around, parking across the street from the victim's house. Defendant was in the front passenger seat, a young woman was driving, and there were two other women in the back seat. The victim recognized Defendant, a white male, from his picture on Facebook. Defendant got out of the car and opened the trunk. Defendant began rummaging through the trunk and asked the driver of the car where the True Religion jogging suit was. The driver responded that Defendant should check in her purse. The victim could not see into the trunk, but he was suspicious that Defendant had not come prepared with the item that he agreed to sell.

While the victim was waiting for Defendant to produce the jogging suit, two men walked up, one of whom had an afro. One of the men said "give me everything" and hit the victim across the head with a gun. The other man went into the victim's pockets and took the $150 cash that was intended for the purchase of the jogging suit as well as the victim's cellphone, an iPhone 6. The Defendant just watched as the victim was on the ground bleeding and dazed. The victim saw his stepfather approaching from the house. At that point, Defendant said, "let's go, let's go," closed the trunk, and got back into the

---

[1] Codefendant Pierce is not a party to this appeal. The record indicates that she did not timely file a motion for new trial, and she does not have a direct appeal currently pending before this Court.

car, which sped off down the street. The victim believed that Defendant directed his comment at the group, including the two assailants, because they also took off running, though the victim believed that they ran in a different direction than the car.

The victim's stepfather, Charles Jones, and uncle, Tony Muse, were in the front yard of the house and saw the attack on the victim. They both described the red car driven by a young black woman, a white guy who got out of the front seat and opened the trunk, and the two black men who walked up and hit the victim. The victim fell to the ground, and the two black men as well as the white guy appeared to be standing over him. Mr. Jones ran toward the group, asking what they were doing. One of the men pointed a gun at Mr. Jones. The white guy then closed the trunk and got back into the car, which drove off in the same direction as the two men who fled on foot. Mr. Jones and Mr. Muse got into a pickup truck and followed the two black men. At a dead end street near a cemetery, one of the men pointed a gun at the truck, so Mr. Jones and Mr. Muse backed off. They then saw the red car and followed it. The car was driving fast and ran a red light. The car then made a U-turn, stopped near an alley, and picked up the two men who had attacked the victim.

The victim's mother called 911, and the victim was eventually taken to the hospital for stitches on his eyebrow and a broken nose. The victim later conducted his own investigation on Facebook, looking at photos on Defendant's profile. The victim noticed that the True Religion jogging suit was still listed for sale. Defendant also posted an iPhone 6 for sale three days after the robbery; the victim was able to identify the phone as his because of a crack on the right side. The victim saw a video of Defendant and his girlfriend, whom the victim recognized as the driver of the red car. This led the victim to the Facebook profile of Codefendant Pierce, which contained several pictures of the red car, a Chevy Cobalt with a spoiler. The victim gave the information he collected to Sergeant Jeff Dennison of the Memphis Police Department, the lead investigator on the case. The victim was able to identify both Defendant and Codefendant Pierce in photographic lineups and at trial.

Defendant was eventually arrested. After being advised of and waiving his rights, Defendant made a statement. Defendant admitted that he arranged a clothing sale with the victim and was present during the robbery. Defendant stated that Codefendant Pierce was his girlfriend, that he knew one of the robbers went by the nickname "Boosie," and that he did not know the other robber, who he described as a black male with an afro. Defendant admitted that he received a cellphone from the robbery and that he posted it for sale on Facebook.

Codefendant Pierce also made a statement to the police. She admitted that the red car was her vehicle and that she was present during the robbery; however, she denied that

she was driving. Codefendant Pierce admitted that she knew Boosie and referred to him as her "play brother." Codefendant Pierce stated that Boosie and the guy with the afro had been in the car earlier but were let out at a store before they arrived on Dunnvant Street. After Boosie and the guy with the afro attacked the victim, the car drove around the corner and picked them up.

Sergeant Dennison testified that he was unable to develop enough information to identify and charge the two men who had attacked the victim. The victim agreed that he initially misidentified two men in a picture with Defendant from Facebook. The victim could not identify Boosie in a photographic lineup presented to him by Sergeant Dennison.

Defendant testified that he was eighteen years old in September 2015 and had never been convicted of a crime. Defendant testified that he often sold clothes, phones, and shoes on Facebook. Defendant mostly sold clothing he no longer wore but also sold items for his friends. Defendant was contacted by the victim in August of 2015 about a True Religion jogging suit that he had for sale. Defendant had purchased the jogging suit in Nashville with money that he had earned from his job at Steak and Shake. Defendant communicated with the victim back and forth over the course of a month before the victim finally agreed to purchase the jogging suit. Defendant gave the victim his phone number so that they could arrange a meeting. The victim gave the Defendant his address. Defendant denied that he was trying to "reel . . . in" the victim for a robbery.

Defendant did not have a car, so he asked his girlfriend, Codefendant Pierce, for a ride in her car. Defendant testified that he had just met Codefendant Pierce at the beginning of September and that they had been dating for only a few days. When Codefendant Pierce came to pick up Defendant, her friends Ashley Echols and Yasmine Brown were also in the car. Defendant testified that the car pulled up in front of the victim's house, the victim came outside, and Defendant opened the trunk. Defendant showed the victim some clothing items, including some jeans that the victim tried on. Defendant asked Codefendant Pierce where the jogging suit was, and she said it was in her purse. Then, before Defendant could get the jogging suit out of the purse, two black men walked up and struck the victim with a gun. Defendant closed the trunk and said "let's go" to the people in the car because he was scared and his first instinct was to flee the scene. The car drove off, and the two assailants fled on foot. One of the assailants Defendant recognized as Boosie. Defendant testified that he had met Boosie through Codefendant Pierce, that she referred to Boosie as her "play brother," and that he had only known both of them for a couple of weeks. Defendant did not know the other assailant and described him as having an afro.

Defendant testified that the car then made a U-turn on South Parkway and picked up Boosie and the guy with the afro near a cemetery. Defendant denied that the two men had been in the car previously or that he had seen them earlier that day. One of the two men threw an iPhone 6 over the seat to Defendant and said "here, you can have this, it's cracked." Defendant agreed that he was not thinking when he accepted the phone but stated that he did not know that the phone belonged to the victim because he did not know what had been taken during the robbery and because the phone did not contain any pictures or identifying information. Defendant admitted that he posted the phone for sale on Facebook, but it was later stolen. Defendant agreed that he did not call 911 to report the robbery, but he did provide a statement to police and tried to give them as much information as he could about Boosie and the guy with the afro. Defendant insisted, "I went to go sell True Religion clothing and for a robbery just to occur out of no[]where that I did not plan and had no intention of committing, I was not responsible."

Yasmine Brown testified on behalf of Codefendant Pierce. Ms. Brown and Codefendant Pierce had been friends for several years. Codefendant Pierce often gave other people rides in and let other people drive her red Chevy Cobalt. On September 16, 2015, Defendant asked Codefendant Pierce for a ride. According to Ms. Brown, "we didn't think anything of it" because "Dylan always sold clothes." Codefendant Pierce could not drive because her license was suspended, so her friend Ashley Echols drove. Ms. Brown and Codefendant Pierce rode in the back seat.

When they arrived at the victim's house, Defendant got out of the car, asked Ms. Echols to open the trunk, and asked Codefendant Pierce where the clothing was. Ms. Brown could not see what was happening behind the car because the trunk was open. However, she heard a commotion and saw the victim's parents in the yard yelling and screaming. Defendant closed the trunk, and Ms. Echols drove off. They were followed by a red pickup truck, and the driver seemed mad.

At some point, Defendant told Ms. Echols to stop because he saw his cousin and another man walking down the road. Ms. Brown testified that Defendant's cousin was called "Boosie or Cortez or something like that." Ms. Brown testified that she and the other women had previously met Boosie through Defendant. The two men got into the back seat of the car with Ms. Brown and Codefendant Pierce. One of the men had a gun. Defendant and Boosie had a conversation about splitting the money, and Defendant said that he could sell the phone. Codefendant Pierce was upset with Defendant, and they subsequently broke up. Ms. Brown and Codefendant Pierce were later told that the police were looking for them. Ms. Brown accompanied Codefendant Pierce to the police station. However, the police never questioned Ms. Brown.

On cross-examination, Ms. Brown testified that Boosie and the other guy had been in the car earlier but were dropped off at a store about twenty minutes before they got to the victim's house on the other side of town. Ms. Brown agreed that Codefendant Pierce was currently engaged to a person with the Facebook nickname "South Memphis Boosie" but testified that he was a different person than the Boosie who was involved in the robbery.

Defendant was convicted of aggravated robbery, and Codefendant Pierce was convicted of facilitation of aggravated robbery and accessory after the fact. Defendant was sentenced to eight years. On June 16, 2017, Defendant filed a motion for new trial, which was denied by the trial court on August 4, 2017. Defendant filed a timely notice of appeal.

## *Analysis*

Defendant argues on appeal that the trial court erred by failing to orally instruct the jury as to the definitions of intentionally and knowingly, that the evidence is insufficient to support his conviction for aggravated robbery, and that the trial court erred in excluding Defendant's written statement after deeming portions of the statement to be self-serving. We will address each issue in turn.

## *I. Jury Instructions*

Defendant argues that the trial court erred by failing to orally instruct the jury as to the definitions of intentionally and knowingly. Defendant concedes that he failed to object to the omission at trial and failed to raise the issue in his motion for new trial. However, Defendant asserts that he is entitled to plain error relief. The State responds that Defendant has failed to establish the necessary factors for plain error relief and that any error was harmless and, thus, not of such magnitude that it probably affected the outcome of the trial.

At the conclusion of the proof and prior to closing arguments, the trial court read the jury charge to the jury. The trial court read the definition of criminal responsibility, which included the instructions that Defendant must have been "acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense" and that the jury "must find that all the essential elements of said offenses have been proven by the State beyond a reasonable doubt." The trial court then read the elements for the charged offense of aggravated robbery, including that "the defendant took such property intentionally or knowingly." The trial court defined several of the terms used in the elements of aggravated robbery, including obtain, consent, property, owner, and deadly weapon, but did not define the terms intentionally or knowingly.

Subsequent instructions on the lesser-included offenses read to the jury stated that those terms "have been previously defined in these instructions."[2] After the jury retired to deliberate, the prosecutor brought the missing definitions to the attention of the trial court. Because the trial court's secretary was gone for the day, the prosecutor offered to type the definitions and provide them to the trial court. Subsequently, the jury submitted a question regarding whether the State was required to prove all of the elements of aggravated robbery. Before answering the question, the trial court stated, "Also, just for the record, I did supplement the jury charge with instructions for intentionally and knowingly." The written jury charge included in the record on appeal contains the definitions of intentionally and knowingly on the last page before the trial court's signature with a separate file-stamp.[3] Nowhere in the transcript does it indicate that the trial court read the previously omitted instructions to the jury.

Though the jury was eventually provided with complete written instructions, the trial court's oral instructions were incomplete with the omission of the definitions of intentionally and knowingly. We note that while some cases hold that "'issues concerning incomplete [jury] instructions are deemed waived in the absence of an objection or special request,'" *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007) (quoting *State v. Page*, 184 S.W.3d 223, 230 (Tenn. 2006)), those cases generally address instructions on specific defenses or lesser-included offenses, which may be requested or waived by the defendant. The Tennessee Supreme Court has previously indicated that when the instruction "omitted is one that is fundamental in nature [and] essential to a fair trial," such as the definition of a material element of the charged offense, "the failure to request that [the element] be defined does not preclude a finding of error." *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990) (holding that the defendant did not waive error by failing to object to omission of the definition of rape as an element of felony murder). However, we agree that this issue is waived due to Defendant's failure to include it in his motion for new trial. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . unless the same was specifically stated in a motion for a new trial[.]"); *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (holding that failure to object to erroneous definitions of intentionally and knowingly did not waive error but failure to include issue in motion for new trial did). Thus, we are limited to reviewing the issue for plain error. *See* Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on

---

[2] The trial court's instructions on the charged offenses and lesser-included offenses against Codefendant Pierce also referred back to these omitted instructions.

[3] Defendant does not challenge the contents of the definitions, which track the statutory language. *See* T.C.A. § 39-11-302.

appeal."); *Faulkner*, 154 S.W.3d at 58. Issues not raised in the trial court may be reviewed in the discretion of the appellate court for plain error when these five factors are established: (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the defendant did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016); *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000).

The record clearly establishes what occurred in the trial court. The technical record submitted to this Court contained the written jury instructions with the out-of-place definitions, the jury's question during deliberation, and the trial court's statement regarding supplementing the instructions, but did not contain the trial court's recitation of the jury instructions prior to the jury beginning its deliberations. Defendant subsequently moved this Court to supplement the record with the transcript of the trial court's oral instructions, which also included the prosecutor's statement regarding the missing definitions. We reject the State's contention that "the record does not clearly reflect how the supplemental instruction was provided to the jury." There is no indication in either the original or supplemental transcripts that any other proceeding occurred in open court after the conclusion of the proof that was not transcribed and/or submitted to this Court. To accept the State's contention would be to presume from the transcript's silence that the trial court engaged in an improper ex parte communication with the jury. *State v. Tune*, 872 S.W.2d 922, 928 (Tenn. Crim. App. 1993) ("Given the importance of judicial impartiality and fairness in appearance as well as in fact, it is generally considered improper for the trial judge to communicate with jurors off the record and outside the presence of counsel," though such may be deemed harmless). Additionally, Defendant further supplemented the record, simultaneously with the filing of his reply brief, with an audio recording of the proceedings in court from the time the trial court read the jury charge until the jury returned with its verdict, which does not reveal any additional statements made by the trial court to the jury in open court. Because the record submitted to this Court does not contain any evidence that the trial court orally recited the definitions of intentionally and knowingly, the record is clear that these instructions were provided to the jury only in writing.

The trial court's failure to orally instruct the jury, in addition to providing written instructions, as to the definitions of intentionally and knowingly breached a clear and unequivocal rule of law. Rule 30(c) of the Tennessee Rules of Criminal Procedure provides,

> In the trial of all felonies—except where pleas of guilty have been entered—every word of the judge's instructions shall be reduced to writing

> before being given to the jury.  The written charge *shall be read* to the jury
> and taken to the jury room by the jury when it retires to deliberate. . . .

(Emphasis added).  The word "shall" is generally construed as being mandatory rather than discretionary.  *See State v. Haddon*, 109 S.W.3d 382, 386 (Tenn. Crim. App. 2002) (citing *Stubbs v. State*, 393 S.W.2d 150 (Tenn. 1965)).  The Tennessee Supreme Court has long held that the requirement that "every word of the judge's instructions shall be reduced to writing" is mandatory.[4]  *See State v. Gorman*, 628 S.W.2d 739, 740 (Tenn. 1982) (citing *McElhaney v. State*, 420 S.W.2d 643, 645 (Tenn. 1967)).  There is no indication in the text of the rule that the requirement that "[t]he written charge shall be read to the jury" is any less mandatory.  If "[e]xtemporaneous oral statements [by the trial court at the conclusion of trial], no matter how accurate, are prohibited," *id.*, then it is equally true that a trial court's provision of written instructions that have not been read to the jury is also prohibited.  *See State v. Bowers*, 77 S.W.3d 776, 791 (Tenn. Crim. App. 2001) ("Defendant correctly points out that the trial court violated Rule 30 of the Tennessee Rules of Criminal Procedure" by providing a written supplemental instruction to the jury without having read it); *State v. Crocker*, 697 S.W.2d 362, 365 (Tenn. Crim. App. 1985) ("Clearly, the trial court's . . . failure to personally read and deliver to the jury the supplemental charge w[as] highly irregular and improper.").

This Court has previously explained that the problem with giving a written instruction to the jury without reading it "is that there is no assurance from the record that all of the jurors received the information in the supplemental instruction."  *Bowers*, 77 S.W.3d at 791.  As explained by the Court of Appeals of Kansas,

> Instruction of the jury is one of the most fundamental duties of the court and it is only through their oral delivery that the court can be assured that each member of the jury has actually received all of the instructions.  If, for example, written copies of the instructions are given to each juror, a divergence in literacy and reading comprehension may well leave some jurors uninstructed.

---

[4] Several unpublished opinions of this Court have indicated that Rule 30(c)'s requirement that the trial court's instructions shall be in writing does not apply to supplemental instructions given in response to jury questions during deliberation.  *See State v. Karen Marable*, No. W2008-02191-CCA-R3-CD, 2010 WL 2553645, at *10 (Tenn. Crim. App. June 24, 2010) (citing *State v. John William Matkin III*, No. E2005-02946-CCA-R3-CD, 2007 WL 4117362, at *8 (Tenn. Crim. App. Nov. 19, 2007), *perm. app. denied* (Tenn. Apr. 7, 2008); *State v. Tywan Faulk*, No. M1999-01124-CCA-R3-CD, 2000 WL 1278375, at *7 (Tenn. Crim. App. Aug. 31, 2000), *perm. app. dismissed* (Tenn. Nov. 28, 2000)), *no perm. app. filed*.  However, those cases involve instructions that "merely clarify prior written instructions," *id.*, rather than instructions that were erroneously omitted from the original charge.  *But see State v. Bowers*, 77 S.W.3d 776, 791 (Tenn. Crim. App. 2001) (applying Rule 30(c) to supplemental instruction); *State v. Crocker*, 697 S.W.2d 362, 365 (Tenn. Crim. App. 1985) (same).

*State v. Norris*, 699 P.2d 585, 588 (Kan. Ct. App. 1985); *see also State v. Sanchez*, 94 P.3d 384, 389 (Wash. Ct. App. 2004) ("[W]e will not presume the jury reads written instructions alone or that the jury was sufficiently literate to comprehend the instructions accurately."); *State v. Nelson*, 587 N.W.2d 439, 444 (S.D. 1998) (stating that even when literacy is a requirement of jury service, "we cannot assume they actually read all the instructions in the jury room, even if each one was given a copy"). The Court of Appeals of Washington found the situation "analogous to giving an erroneous, ambiguous, or misleading instruction." *Sanchez*, 94 P.3d at 389. Without assurance that each member of the jury read and understood the instructions, the typical presumption that jurors follow the instructions of the trial court breaks down. *Id.*; *but cf. State v. Harbison*, 539 S.W.3d 149, 163 (Tenn. 2018) (stating the presumption that jurors follow all instructions given by the trial court and the burden on the defendant to overcome that presumption by clear and convincing evidence). Indeed, this Court has often deemed jury instruction issues to be waived for failure to include a transcript of the trial court's oral recitation, even when the written charge is included in the record, "'because without a complete record, it is impossible for this [C]ourt to discern whether the written jury instruction conforms to the instructions *as read to the jury* and thus, whether error actually occurred.'" *State v. Marcus Anderson*, No. W2011-00139-CCA-R3-CD, 2012 WL 3871409, at *2 (Tenn. Crim. App. Sept. 5, 2012) (quoting *State v. Dedonnas R. Thomas*, No. W2000-01465-CCA-R3-CD, 2002 WL 1558687, at *7 (Tenn. Crim. App. Jan. 30, 2002), *no perm. app. filed*) (emphasis added), *no perm. app. filed*; *see State v. Bonam*, 7 S.W.3d 87, 88 (Tenn. Crim. App. 1999). Thus, Rule 30(c)'s requirements that the jury charge be both provided in writing and read aloud to the jury are clear and unequivocal.

Moreover, the trial court's failure to read the definitions of intentionally and knowingly adversely affected a substantial right. Defendants in criminal cases have a constitutional right to trial by jury, which includes the "right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). Thus, trial courts have a duty "to instruct the jury on the general principles of law applicable to the facts of the case," which includes defining every element of the offense charged. *State v. Clark*, 452 S.W.3d 268, 294-95 (Tenn. 2014) (citations omitted). "The words defining [an] offense . . . have a technical meaning and it is the trial court's duty to give such meaning to the jury in the charge and not merely to use the language of the statute" listing the elements of the offense. *Teel*, 793 S.W.2d at 249. A defendant's mental state, or *mens rea*, is a material element of an offense. *See* T.C.A. § 39-11-301(b) ("A culpable mental state is required within this title unless the definition of an offense plainly dispenses with a mental element."); *Clark*, 452 S.W.3d at 295. The Tennessee Supreme Court has held that "the failure to properly instruct the jury on a material element of an offense is a non-structural constitutional error." *Id.*

There is no evidence in the record that Defendant waived the issue for tactical purposes. There would have been no tactical advantage to the jury not receiving an instruction defining the requisite *mens rea*, especially given the fact that the central issue at trial was Defendant's intent—whether Defendant possessed the requisite intent to be criminally responsible for the actions of Boosie and the guy with the afro. During closing argument, the prosecutor outlined each element of aggravated robbery, which the State was required to prove beyond a reasonable doubt, and stated that Defendant acted intentionally and knowingly by arranging the meeting with the victim, coordinating with Codefendant Pierce to drive the vehicle, stalling until the assailants walked up by pretending that he could not find the jogging suit, and then signaling that the group should make their escape by saying "let's go." The defense, on the other hand, argued that Defendant merely intended to sell clothes to the victim and did not arrange or participate in the robbery. Additionally, there is no evidence in the record that defense counsel affirmatively agreed to the trial court's method of providing the jury with the omitted definitions. *See Crocker*, 697 S.W.2d at 365 (noting the defense counsel not only failed to object but actually delivered to the jury, at trial court's request, written instruction that had not been read in open court).

Finally, we must determine whether consideration of the error is necessary to do substantial justice. Because we are reviewing the issue for plain error, Defendant "bears the burden of persuading the appellate court . . . that the error was of sufficient magnitude that it probably changed the outcome of the trial." *Martin*, 505 S.W.3d at 505.[5] As stated above, "the failure to properly instruct the jury on a material element of an offense is a non-structural constitutional error," and as such, is subject to harmless error review. *Clark*, 452 S.W.3d at 295; *see also Garrison*, 40 S.W.3d at 434 (citing *Neder v. United States*, 527 U.S. 1, 8-9 (1999); *Teel*, 793 S.W.2d at 249). "[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Neder*, 527 U.S. at 17. We are required to consider a particular instruction in the context of the trial court's charge as a whole. *Clark*, 452 S.W.3d at 295. "When a challenged instruction was so erroneous that the instruction alone infected the entire trial and resulted in a conviction that violates due process, or when the judge's charge, taken as a whole, failed to fairly submit the legal issues or misled the jury as to the applicable law, such deficiencies are prejudicial error that require reversal." *Id*. (internal citations omitted).

---

[5] If the issue had been properly preserved for plenary review on appeal, the State would have the burden of proving beyond a reasonable doubt that the error was harmless. *See Clark*, 452 S.W.3d at 295 (citing *State v. Cecil*, 409 S.W.3d 599, 610 (Tenn. 2013); *State v. Hawkins*, 406 S.W.3d 121, 128 (Tenn. 2013)); *Garrison*, 40 S.W.3d at 434.

The State relies on *State v. Bowers* and *State v. Chuncy Lesolue Hollis* to argue that any error by the trial court was harmless. In *Chuncy Lesolue Hollis*, the defendant argued that the trial court erred by failing to instruct the jury on cause of death as an essential element of first degree murder, relying on *State v. Farner*, 66 S.W.3d at 188, 204 (Tenn. 2001). No. W2015-00718-CCA-R3-CD, 2016 WL 353305, at *9 (Tenn. Crim. App. Jan. 28, 2016), *perm. app. denied* (Tenn. June 24, 2016). This Court held that the trial court did not err because "the victim's cause of death was never disputed and the defendant did not request a specific instruction on causation." *Id*. at *10; *see Farner*, 66 S.W.3d at 204 ("We recognize that, while causation is an essential element of every homicide offense, including criminally negligent homicide, it is not seriously disputed in most cases."). In this case, the State argues that any error in failing to read the definitions of intentionally and knowingly as an essential element of aggravated robbery was harmless because the issue of whether Boosie and the guy with the afro intentionally and knowingly took the victim's property was never in dispute. However, because Defendant was charged under a theory of criminal responsibility, the State was required to prove not only that the victim's property was taken intentionally or knowingly, but also that Defendant "[a]ct[ed] with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense." T.C.A. § 39-11-402(2). This Court has held that "the culpable mental state of an aider and abettor is 'intentional'" and that the statutory definition of intentional applies to a defendant charged with criminal responsibility. *State v. Williamson*, 919 S.W.2d 69, 77 (Tenn. Crim. App. 1995). As stated above, Defendant's intent was the primary issue at trial.

We also find that this case is distinguishable from *Bowers*. In *Bowers*, the jury sent a note to the trial court during deliberations, asking for a dictionary and indicating that they wanted to know the definition of the word "captious" as used in the jury instruction on reasonable doubt. 77 S.W.3d at 789. After some discussion with counsel, the trial court sent the jury a written definition of the word, stating, "Let's send this back and hope they read." *Id*. at 790. On appeal, this Court held that the trial court violated Rule 30(c) by providing the supplemental instruction in writing without having read it and without providing an instruction that the jury was not to place undue emphasis on the supplemental instruction. *Id*. at 791. However, this Court found that the error was harmless "in light of the entire record." *Id*. The instruction in that case was clearly a supplemental instruction meant to simply clarify the prior written instructions. Such supplemental instructions are "entirely collateral to the general charge" and may be properly reviewed for harmless error. *McElhaney*, 420 S.W.2d at 646. On the other hand, as recognized by the Tennessee Supreme Court more than 50 years ago, a violation with regard to the "statements or restatements of the substantial points of law embodied in the general charge[, which serve] as a guide to the jury in the determination of the guilt or innocence of the defendant," is reversible error "without regard to any inquiry with

respect to the harmless error statute." *Id*. at 646-47 (analyzing the failure to provide written instructions under T.C.A. § 40-2516, the statutory precursor to Rule 30(c), which required that "[e]very word of the charge shall be written, and read from the writing[.]").

Because the terms intentionally and knowingly have specific definitions in our legal code, *see* T.C.A. § 39-11-302, and it was the trial court's duty to instruct the jury as to those legal definitions, *see Teel*, 793 S.W.2d at 249, the definitions of intentionally and knowingly are clearly part of "the general charge to the jury containing [t]he rules of law which the jury is called upon to apply in the particular case," *McElhaney*, 420 S.W.2d at 646, rather than merely a supplemental instruction clarifying the prior instructions. Again, because there is no assurance that the jury actually received the information contained in the written instructions without the trial court's oral recitation, *see Bowers*, 77 S.W.3d at 791, they essentially stood uninstructed on the material element of the *mens rea* required for the offense of aggravated robbery and the theory of criminal responsibility. This Court has previously held that the failure to provide a definition of the *mens rea* is not harmless, especially when the defendant's mental state is a "hotly contested issue." *State v. Robert F. Smythers*, No. E2001-02806-CCA-R3-CD, 2003 WL 21145428, at *18-19 (Tenn. Crim. App. May 19, 2003), *perm. app. denied* (Tenn. Oct. 27, 2003). In the same vein, we conclude that without orally instructing the jury as to the definitions of intentionally and knowingly, the trial court's charge, taken as a whole, failed to fairly submit the legal issues to the jury. As discussed further below, the evidence of Defendant's intent to promote, assist, or benefit from the robbery of the victim, though legally sufficient to support the verdict, was largely circumstantial and was neither overwhelming nor uncontroverted. Thus, we cannot conclude beyond a reasonable doubt that the error was harmless.

We conclude that Defendant has satisfied all of the required factors for plain error relief. Therefore, we must reverse the judgment of the trial court and remand the case for a new trial before a properly instructed jury.

## II. Sufficiency of the Evidence

Defendant argues that the evidence is insufficient to sustain his conviction for aggravated robbery because there was no testimony that he possessed a weapon, took anything from the person of the victim, or "helped or encouraged either of the culprits in their efforts to commit the offense." The State responds that there "was more than enough evidence for the jury to conclude [Defendant] helped set up the robbery or aided

the other robbers in some other way, with the intent to benefit from the robbery."[6] We agree with the State.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Defendant was convicted of aggravated robbery. An aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon of by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. §§ 39-13-401(a); -402(a)(1). A theft of property occurs when a person "with intent to deprive the owner of property, . . . knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a).

A person may be charged with the commission of an offense committed "by the conduct of another for which the person is criminally responsible." T.C.A. § 39-11-401.

---

[6] The State also contends that Defendant's "standing over [the victim] after he had been knocked to the ground . . . was evidence that [Defendant] actively participated in the forceful and violent taking of [the victim's] belongings." We need not decide whether this evidence alone would be sufficient to convict Defendant as the principle offender given that the jury was instructed that they could consider guilt under a theory of criminal responsibility.

"Criminal responsibility is not a separate crime, but 'a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person.'" *State v. Dickson*, 413 S.W.3d 735, 744 (Tenn. 2013) (quoting *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999)). A person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2). Though "no specific act or deed need be demonstrated . . ., the evidence must establish that the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission." *Dorantes*, 331 S.W.3d at 386 (internal citations omitted). A person's "presence and companionship with the perpetrator of a felony before and after the commission of the crime are circumstances from which an individual's participation may be inferred." *Id.* (quoting *State v. Phillips*, 76 S.W.3d 1, 9 (Tenn. Crim. App. 2001)).

In the light most favorable to the State, the evidence shows that Defendant arranged a meeting with the victim to purportedly sell a jogging suit for $150. Defendant secured transportation from his girlfriend at the time, Codefendant Pierce, to the victim's home on the other side of town. The victim became suspicious when Defendant did not immediately produce the jogging suit but instead rummaged through other clothing items in the trunk of the car. Within a few moments, two men approached and attacked the victim, striking him in the head with a gun and knocking him to the ground. One of the men went into the victim's pockets and took his cash and iPhone. Though Defendant was unarmed and standing next to a trunk full of merchandise, the robbers did not attack Defendant or take anything from him. Defendant admitted that he knew one of the robbers as Boosie. As the victim's family members approached, Defendant fled the scene in the red car. Defendant admitted that the red car subsequently picked up the two robbers moments later. There was evidence that the robbers had been in the car prior to the robbery, and Yasmine Brown testified that Defendant directed the driver to pull over and let the robbers into the car after the robbery. Ms. Brown also testified that Defendant and Boosie discussed splitting the proceeds of the robbery and that Defendant offered to sell the phone. Defendant admitted that he received an iPhone from one of the robbers and posted it for sale on Facebook, though he claimed that he did not know that the phone belonged to the victim. By its verdict, the jury clearly rejected Defendant's contention that he was not responsible for the robbery of the victim. The evidence adduced at trial is sufficient to support Defendant's conviction for aggravated robbery under a theory of criminal responsibility. *See State v. Ramone Hunter*, No. W2014-01389-CCA-R3-CD, 2015 WL 12978642, at *3 (Tenn. Crim. App. July 15, 2015) (concluding evidence sufficient to convict of aggravated robbery where an "unknown assailant pointed a gun at the victim and forced the victim inside, demanding his money, while the defendant stood by and observed" despite the defendant's testimony that he was merely an innocent

bystander), *no perm. app. filed*; *State v. Christopher Bryan Hancock*, No. E2011-00111-CCA-R3-CD, 2012 WL 4340693, at *5 (Tenn. Crim. App. Sept. 24, 2012) (concluding evidence sufficient to convict of aggravated robbery, despite lack of proof that defendant helped plan the crime, where defendant knew the robbery had occurred, helped hide the robbers, and received some of the proceeds), *no perm. app. filed*.

### *III. Defendant's Statement*

Defendant argues that the trial court erred in sustaining the prosecutor's objection to the admission of Defendant's written statement to police on the basis that any exculpatory statements contained therein were self-serving. The State responds that the trial court did not err in ruling on the prosecutor's objection and that the trial court in fact allowed defense counsel to elicit testimony regarding the specific statement Defendant complains was excluded. In the alternative, the State argues that any error was harmless because Defendant testified at trial. In his reply brief,[7] Defendant argues that because the State was allowed to elicit testimony regarding Defendant's inculpatory statements, then he should have been allowed to introduce the exculpatory or self-serving statements under the rule of completeness and the constitutional right to cross-examine the witnesses against him. Defendant also argues that the written statement "was potentially probative of the assertion that the detective's investigation of this case was incomplete, rather than being offered to show the truth of the matter asserted," and thus, should have been admitted for that non-hearsay purpose.

During the direct examination of Sergeant Dennison, the following exchange occurred with regard to Defendant's statement to police:

[Prosecutor]: And did [Defendant] indicate to you whether or not he participated in selling that clothing to Mr. Houston?

[Sergeant Dennison]: Yes, ma'am.

[Prosecutor]: And did he indicate to you whether or not he was present --

[Defense Counsel]: Object to leading, your Honor.

[Prosecutor]: I'm sorry.

---

[7] Defendant risks waiver of issues raised for the first time in a reply brief. *Hughes v. Tennessee Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017) (citing *State v. Cornelius Banks*, No. W2014-02195-CCA-R3-CD, 2016 WL 369562, at *10 (Tenn. Crim. App. Jan. 29, 2016), *no perm. app. filed*; *State v. Walter Francis Fitzpatrick III*, E2014-01864-CCA-R3-CD, 2015 WL 5242915, at *8 (Tenn. Crim. App. Sept. 8, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016)).

[Defense Counsel]: Object to leading.

[Prosecutor]: Did he tell you anything about whether or not he was at the robbery?

[Sergeant Dennison]: Yes.

After a few questions concerning Defendant's statements regarding the vehicle and Codefendant Pierce, the prosecutor asked, "And you say he indicated to you that he had participated in the robbery. Did he indicate to you if there were other individuals involved in the robbery?" To which Sergeant Dennison responded, "Yes, ma'am."

Subsequently, during cross-examination, the following exchange occurred:

[Defense Counsel]: Okay. And you were, I believe you were asked about a statement from [Defendant] earlier and the State asked you if [Defendant] said he had participated in it?

[Sergeant Dennison]: That is correct.

[Defense Counsel]: Okay. And your answer to the question was what?

[Sergeant Dennison]: I believe I said he participated or he was there, one of the two.

[Defense Counsel]: Okay. Now, are you certain about that?

[Sergeant Dennison]: I would have to --

[Prosecutor]: Your Honor, may we approach?

During a bench conference, the prosecutor explained that she anticipated that defense counsel was "going to get into the self-serving portions of [Defendant's] statement[.]" The prosecutor explained that the State intentionally did not enter the written statement into evidence in part as an attempt to avoid any potential *Bruton* issues with regard to Codefendant Pierce.[8] The prosecutor argued that any statements by Defendant that were self-serving would not be against his penal interest and, therefore, would be inadmissible

---

[8] In *Bruton v. United States*, 391 U.S. 123 (1968), the United States Supreme Court held that admission of a codefendant's confession implicating the defendant in a joint trial violates the defendant's constitutional right of confrontation.

hearsay. Defense counsel clarified that he wanted to ask about Defendant's response to the question of whether he participated in the robbery because "[o]n direct [Sergeant Dennison] said yes but here [Defendant] clearly said no, sir." The prosecutor responded "I believe my question was did he indicate to you he was present at the robbery."

The trial court excused the jury from the courtroom and attempted to seek clarity from the parties regarding the basis for the objection. The prosecutor explained that she had intentionally asked very narrow questions regarding Defendant's inculpatory statements and did not put the written statement into evidence. Specifically, the prosecutor stated, "With [Defendant] the question was, did he put himself present at the robbery" and whether he knew the others involved. In addition to avoiding any potential *Bruton* issue, the prosecutor asserted "we had no interest in presenting to the jury nor do we have to present to the jury the self-serving parts of those statements." The prosecutor explained that the statement would qualify as an admission by a party opponent only when offered by the State as the opposing party. Otherwise, the statement would have to be against penal interest to be admitted by Defendant or else Defendant would have to testify. Defense counsel responded that "the problem was that the officer gave an incorrect answer" on direct examination. The trial court ruled, "Since the officer did misstate that, I think we can correct that." The prosecutor continued to argue that the statement was inadmissible hearsay and contained potential *Bruton* issues. Defense counsel cited the rule of completeness and stated, "I just don't understand how you can just introduce part of it and not the whole thing[.]" The prosecutor insisted that she did not introduce part of the statement because the officer did not read from the statement. The trial court eventually sustained the State's objection and ruled that defense counsel "cannot ask the self-serving portions . . . unless your client[] testif[ies] first" but that defense counsel could "clarify that point about participation."

Once the jury returned to the courtroom, the following exchange occurred:

[Defense Counsel]: All right. So, Sergeant Dennison, my question was and still is, did Mr. Brewer participate, say he participated in the robbery?

[Sergeant Dennison]: No, sir.

[Defense Counsel]: Okay. Did he say he did not participate; is that correct?

[Prosecutor]: Objection, your Honor. May we approach? I apologize.

[Trial Court]: All right. But just rephrase the question.

[Defense Counsel]: Do you recall if he said he participated?

[Prosecutor]: Your Honor, again, same objection.

[Trial Court]: Just, we're going to move. What's the answer?

[Sergeant Dennison]: I recall what he said.

[Defense Counsel]: Okay. And his answer was?

[Sergeant Dennison]: No.

After the conclusion of the State's case-in-chief, Defendant elected to testify. Defendant was asked about his willingness to speak to the police regarding his interaction with the victim. Defendant identified his written statement based on his signature waiving his rights and agreeing to speak to police. The prosecutor again objected to the admission of the statement on the basis of hearsay. The prosecutor argued that Defendant could not use the statement to bolster his testimony with a prior consistent statement. The trial court sustained the objection. Defendant then testified that he told the police that he believed that Codefendant Pierce and the two other guys were responsible for the robbery and explained the basis for his belief. During cross-examination, the prosecutor used portions of Defendant's statement as a prior inconsistent statement to impeach certain aspects of his testimony. Defense counsel did not attempt to introduce the statement during redirect to rehabilitate Defendant's testimony.[9]

The admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with the exercise of that discretion in the absence of a clear showing of abuse appearing on the face of the record. *See State v. McCoy*, 459 S.W.3d 1, 8 (Tenn. 2014); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993). An abuse of discretion occurs when the trial court (1) applies an incorrect legal standard; (2) reaches an illogical or unreasonable decision; or (3) bases its decision on a clearly erroneous assessment of the evidence. *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

It has long been held in Tennessee that, generally, a defendant may not introduce his own statement without testifying. *See, e.g.*, *State v. King*, 694 S.W.2d 941, 945

---

[9] We note that the statement itself was not made an exhibit or introduced for identification purposes. Simultaneously with his reply brief, Defendant filed a motion to supplement the record with a copy of this statement, which this Court granted.

(Tenn. 1985); *Moon v. State*, 242 S.W. 39, 54 (Tenn. 1922). The rationale behind this rule has been explained as follows:

> "A declaration made by a defendant in his own favor, unless part of the res gestae or of a confession offered by the prosecution, is not admissible for the defense. A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse: an accused could create evidence for himself by making statements in his favor for subsequent use at his trial to show his innocence."

*King*, 694 S.W.2d at 945 (quoting *Hall v. State*, 552 S.W.2d 417, 418 (Tenn. Crim. App. 1977)). However, under the Tennessee Rules of Evidence, there is no rule stating that "self-serving" statements by a defendant are always inadmissible. *See State v. Eric Williams*, No. W2013-01593-CCA-R3-CD, 2015 WL 1453389, at *13 (Tenn. Crim. App. Mar. 27, 2015) (quoting *Tony A. Phipps v. State*, No. E2008-01784-CCA-R3-PC, 2010 WL 3947496, at *8 (Tenn. Crim. App. Oct. 11, 2010), *no perm. app. filed*), *no perm app. filed*. Instead, "[t]he vital objection to the admission of this kind of evidence is its hearsay character; the phrase 'self-serving' does not describe an independent ground of objection." *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 128 (Tenn. Ct. App. 1986) (citation omitted); *see* 29A Am. Jur. 2d Evidence § 809. An out-of-court statement offered at trial to prove the truth of the matter asserted, regardless of the identity of the declarant, is hearsay and is generally inadmissible unless it satisfies a specific exception. *See* Tenn. R. Evid. 801; 802. The rationale behind the exclusion of a defendant's "self-serving" statements is the same rationale behind the rule generally excluding hearsay. *See State v. Flood*, 219 S.W.3d 307, 319 (Tenn. 2007) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973)) ("Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability" and are "not subject to cross-examination[.]"). In other words, "[t]his rule simply acknowledges that such statements constitute hearsay if offered to prove the truth of the matter asserted therein and, like other hearsay evidence, are unreliable." *State v. George Glenn Faulkner*, No. M1998-00066-CCA-R3-CD, 2000 WL 711144, at *10 (Tenn. Crim. App. June 2, 2000), *perm. app. denied* (Tenn. Jan. 16, 2001). Thus, under the Tennessee Rules of Evidence, self-serving statements are treated like any other out-of-court statement for evidentiary purposes.

When a defendant's statement is being offered to prove the truth of the matter asserted, it is hearsay and must satisfy one of the exceptions to the hearsay rule in order to be admissible. Though the State may admit a defendant's statement as an admission by party-opponent under Tennessee Rule of Evidence 803(1.2), a defendant cannot admit his own statement under this exception. *See State v. Parsons*, 437 S.W.3d 457, 488

(Tenn. Crim. App. 2011); *State v. Brooks*, 909 S.W.2d 854, 862 (Tenn. Crim. App. 1995). A defendant's statement regarding past conduct does not qualify under the state of mind exception under Tennessee Rule of Evidence 803(3). *See State v. Wilson*, 164 S.W.3d 355, 365 (Tenn. Crim. App. 2003); *see also State v. David G. Jenkins*, No. M2016-00270-CCA-R3-CD, 2017 WL 1425610, at *24 (Tenn. Crim. App. Apr. 21, 2017) (citing *State v. Warner Conrad Bias*, No. E2007-01452-CCA-R3-CD, 2009 WL 3817291, at * 17 (Tenn. Crim. App. Nov. 16, 2009), *no perm. app. filed*) (holding that a defendant's statement to police several days after a crime is not admissible under the state of mind exception to "prove the fact remembered"), *perm. app. denied* (Tenn. Sept. 20, 2017); *but see Eric Williams*, 2015 WL 1453389, at *14 ("The appellant's stating immediately and again shortly after the incident that he did not intend to shoot the victim would fall under this exception."). A defendant's statement in a police report does not qualify as either a business record under Tennessee Rule of Evidence 803(6) or a public record under Tennessee Rule of Evidence 803(8). *See State v. Montez James*, No. W2011-01213-CCA-R3-CD, 2012 WL 4340658, at *15 (Tenn. Crim. App. Sept. 24, 2012), *perm. app. denied* (Tenn. Feb. 13, 2013). A defendant is not an unavailable witness, *see* Tenn. R. Evid. 804(a); thus, he cannot introduce his own statement as a statement against interest under Tennessee Rule of Evidence 804(b)(3). *See State v. Robert Taylor*, No. W2017-00765-CCA-R3-CD, 2018 WL 3868832, at *3 (Tenn. Crim. App. Aug. 14, 2018), *no perm. app. filed*. Even if a defendant could be declared unavailable by exercising his right not to testify, a "self-serving" statement would not be admissible when the overall tenor of the statement is exculpatory rather than inculpatory. *See State v. Dotson*, 254 S.W.3d 378, 392-94 (Tenn. 2008). Additionally, a defendant may not introduce his own statement preemptively during the cross-examination of the interviewing police officer; he must first testify and have his credibility sufficiently attacked in order to introduce the statement as a prior consistent statement. *See State v. Vidal L. Strickland*, No. M2002-01714-CCA-R3-CD, 2003 WL 22243440, at *16 (Tenn. Crim. App. Sept. 30, 2003) (citing Neil P. Cohen et al., *Tennessee Law of Evidence*, § 8.01[9] (4th ed. 2000)), *perm. app. denied* (Tenn. Oct. 17, 2005); *but see State v. Herron*, 461 S.W.3d 890, 905 (Tenn. 2015) ("Prior consistent statements admitted pursuant to this exception are not to be used as substantive evidence of the truth of the matter asserted and are to be used only to rehabilitate the witness's credibility.").

Thus, in this case, Defendant could not independently admit his statement for the truth of the matter asserted because it does not satisfy one of the exceptions to the hearsay rule.[10] However, because the State questioned Sergeant Dennison regarding the more

---

[10] In his appellate brief, Defendant suggests that he was not offering the statement for the truth of the matter asserted but to impeach the detective's testimony that "misrepresent[ed] the substance of [D]efendant's statement." Though "self-serving" statements may be admissible for non-hearsay purposes, *see State v. Belser*, 945 S.W.2d 776, 783-84 (Tenn. Crim. App. 1996), we resolve this issue under the rule of completeness because the State admitted the more inculpatory portions of Defendant's

inculpatory portions of Defendant's statement, the trial court should have admitted the remainder of the statement pursuant to Tennessee Rule of Evidence 106, also known as the rule of completeness. Rule 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Our supreme court has stated that this rule "reflects a concern for fairness and allows the trier of fact to assess related information at the same time rather than piecemeal." *State v. Torres*, 82 S.W.3d 236, 252 (Tenn. 2002) (citing *State v. Keough*, 18 S.W.3d 175, 182-83 (Tenn. 2000)). Thus, "Rule 106 addresses two concerns: (1) the misleading impression created by taking matters out of context, and (2) the inadequacy of repair work when the admission of the disputed proof is delayed to a point later in the trial." *State v. Vaughan*, 144 S.W.3d 391, 407 (Tenn. Crim. App. 2003) (internal citations omitted). Evidence proffered under the rule must be relevant and either explain or qualify the already-admitted proof. *Id*. (citation omitted). Because the rule is one of fairness, the proffered evidence must do one of the following: "(1) explains the already-admitted proof; (2) places the admitted proof in context; (3) avoids misleading the trier of fact; or (4) ensures a fair and impartial understanding of the already-admitted proof." *Id*. (citations omitted). This Court reviews a trial court's determination under Rule 106 for an abuse of discretion. *See Keough*, 18 S.W.3d at 183.

Because Rule 106 "is a rule of timing rather than admissibility," *Vaughn*, 144 S.W.3d at 406, it is not immediately clear whether the rule would permit the introduction of otherwise inadmissible hearsay. *See State v. William Pierre Torres*, No. E1999-00866-CCA-R3-DD, 2001 WL 245137, at *34 (Tenn. Crim. App. Mar. 13, 2001) (citing Neil P. Cohen et al., Tennessee Law of Evidence § 106.2, at 34 (Michie ed., 3d ed. 1995)), *rev'd on other grounds*, *State v. Torres*, 82 S.W.3d 236 (Tenn. 2002); *see also Denton v. State*, 945 S.W.2d 793, 801 (Tenn. Crim. App. 1996) ("The rule assumes that the remaining portion of the statement would ultimately be admissible."). However, "[i]t has long been the law in this State that when a part of a confession or admission is entered into evidence[,] the defendant is entitled to have the jury consider the entire confession." *Curry v. State*, 397 S.W.2d 179, 181 (Tenn. 1965) (citing *Sambolin v. State*, 387 S.W.2d 817, 820 (Tenn. 1965)). In other words,

---

statement. At trial and in his reply brief, Defendant also indicated that he wanted to use additional portions of the statement to "explain the investigation of the police." *See id.* However, Defendant has waived our consideration of such non-hearsay uses of the statement by failing to make an offer of proof at trial. *See* Tenn. R. Evid. 103(a).

- 22 -

"When a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together; and if the prosecution failed to prove the whole statement, the accused is entitled to put in evidence all that was said to him and by him at the time which bears upon the subject of controversy including any exculpatory or self-serving declarations connected therewith. It is for the jury to say what weight shall be given to the several parts of the statement, for they may well believe that part which charges the prisoner, and reject that which tends to exculpate him."

*State v. Robinson*, 622 S.W.2d 62, 71 (Tenn. Crim. App. 1980) (quoting *Espitia v. State*, 288 S.W.2d 731, 733 (Tenn. 1956)) (emphasis omitted). Thus, "when the state introduces only part of a defendant's confession as evidence, the defendant is normally entitled to prove the whole of what was said in order for the jury to be able to weigh the whole statement." *Denton*, 945 S.W.2d at 801.[11] "Indeed, it would not be consistent with fundamental fairness to allow the prosecution to introduce only the most incriminating portions of a defendant's statement without regard to the overall context or relevant exculpatory portions found in the same statement." *Keough*, 18 S.W.3d at 182.

We acknowledge that the State did not admit into evidence the physical document containing Defendant's statement or have Sergeant Dennison read from the statement verbatim. While Rule 106 refers on its face to the introduction of a portion of a writing, this Court has previously held that "cross-examination in extensive detail about a witness's prior statement is tantamount to an introduction of the statement for Rule 106 purposes." *Vaughan*, 144 S.W.3d at 408 n.2 (citing *State v. Belser*, 945 S.W.2d 776, 788 (Tenn. Crim. App. 1996)). We see no reason why the fairness concerns underlying Rule 106 should not equally apply to extensive questioning on direct examination regarding the contents of a written statement. Thus, when the prosecutor asked Sergeant Dennison extensive questions regarding the substance of Defendant's statement, Defendant should have been allowed to admit the remainder of his statement so that the jury could consider the entire statement in its proper context, subject only to such redactions as would have been required to comply with *Bruton*.[12] *See Denton*, 945 S.W.2d at 801-02. Moreover,

---

[11] In *Denton*, this Court held that a defendant's right to admit the entirety of his statement "does not extend to confessions involving a non-testifying co-defendant" under *Bruton* and that the State may redact such portions if doing so does not "alter[] its substance or delete[] therefrom substantially exculpatory information." 945 S.W.2d at 801-02. The Tennessee Supreme Court has also indicated that Rule 106 does not apply to statements regarding the results of or circumstances surrounding a polygraph test as such are inherently unreliable and inadmissible. *Torres*, 82 S.W.3d 252 n.20 (citing *State v. Hartman*, 42 S.W.3d 44, 61-62 (Tenn 2001)).

[12] Because it appears Codefendant Pierce has not appealed her conviction, there will be no *Bruton* issue at Defendant's retrial.

when the State cross-examined Defendant regarding the contents of his statement in order to impeach his credibility, Defendant should have been allowed to admit his "prior consistent statements . . . to place in proper context alleged inconsistencies brought out by opposing counsel." *Belser*, 945 S.W.2d at 786 (citing *State v. Boyd*, 797 S.W.2d 589, 593-94 (Tenn. 1990); *Curry*, 397 S.W.2d at 182-83); *but see State v. Christopher Shane Harrell*, No. E2005-01531-CCA-R3-CD, 2007 WL 595885, at *9-10 (Tenn. Crim. App. Feb. 26, 2007) (concluding admission of entire statement was unnecessary to place discrepancies between defendant's pretrial statement and trial testimony into context), *perm. app. denied* (Tenn. June 25, 2007).

However, if this case were not being remanded for a new trial, we would conclude that Defendant is not entitled to relief on this issue. When the prosecutor mischaracterized Defendant's statement by saying that he admitted participating in the robbery, defense counsel was allowed to explain or qualify the admitted proof by asking Sergeant Dennison whether Defendant actually denied participating in the robbery. Moreover, Defendant testified, thereby placing the substance of his "self-serving" statement before the jury, including his insistence that he only intended to sell clothes to the victim and his belief that Codefendant Pierce was responsible for setting up the robbery of his customer. *See State v. Roger Wayne Henry, Jr.*, No. M2013-02490-CCA-R3-CD, 2015 WL 226113, at *17 (Tenn. Crim. App. Jan. 16, 2015), *perm. app. denied* (Tenn. May 14, 2015). Thus, any error by the trial court was harmless. *See* Tenn. R. App. P. 36(b).

*Conclusion*

Based on the foregoing, we reverse the judgment of the trial court and remand the case for a new trial before a properly instructed jury.

_____
TIMOTHY L. EASTER, JUDGE